OPINION TO THE GOVERNOR.

OCTOBER 31 AS OF OCTOBER 30, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

October 30, 1961

To His Excellency, John A. Notte, Jr.
    Governor of the State of Rhode Island
        and Providence Plantations

Your Excellency's request for our opinion on certain questions of law pertaining to the validity of the primary election for nomination of members of the school committee of the city of Pawtucket held on October 3, 1961 has been duly considered and we submit the following in response thereto.

It appears from your letter requesting our opinion that the following facts regarding the election are undisputed. Because of an oversight or misunderstanding by the authorities charged with preparing the voting machines it was possible for a voter to vote for three candidates whereas he was legally entitled to vote for no more than two. As a result of such error it was definitely ascertained after the election that 186 illegal votes were recorded in several voting districts of the city. In other words that number of voters had voted for three candidates. Your letter does not state that any fraud or other deliberate wrongdoing designed and intended to corrupt the election was involved and for the purpose of this opinion it is assumed that there was none.

There were seven candidates for four nominations and the four candidates, namely, Savoie, McCarthy, Noble and Mc-Cabe, who received the highest number of votes were certified as the nominees. The first three above named received the largest number of votes even if the 186 illegal votes were deducted from their totals. Candidate McCabe, however, would not qualify if the 186 illegal votes were deducted from her total since she received only 76 more than Goodwin, the next highest candidate.

In these circumstances your first question is:

"A) Are Dr. Savoie, Mr. McCarthy, Mr. Noble, and Mrs. McCabe the lawfully nominated candidates for

the office of school committee member so as to author-
ize the Secretary of State and the State Board of Elec-
tions to proceed in accordance with the provisions of
Chapter 17-19, and so as to authorize the election for
school committee to be held on the basis of Dr. Savoie,
Mr. McCarthy, Mr. Noble and Mrs. McCabe as candi-
dates?"

In view of the answer which we shall give to this question
the other questions propounded in your letter will not arise
and therefore they need not be stated here.

After the election the above facts became matters of gen-
eral knowledge. Notwithstanding such knowledge none of
the candidates demanded a recount or protested the va-
lidity of the election in accordance with the provisions of
G. L. 1956, §17-15-34. Consequently there was no ground
laid for litigating the validity of the election in court. Hence
Your Excellency's request poses a serious question whether
the judges of this court should now academically pass on
such validity by rendering a purely advisory opinion. With
some misgivings we have decided to do so.

Perhaps it would be well to preface our opinion by re-
iterating what has been so often stated in the past, namely,
that such an opinion is in no sense a decision of the su-
preme court. In performing this constitutional function
the judges do not speak ex cathedra, from the chair of judg-
ment, but only as consultors somewhat like the juriscon-
sults under the Roman law. However sound the opinion
may be, it carries no mandate. For this reason it is not an
exercise of our judicial power.

Very few American states have required the judges of
their court of last resort to perform this unique function.
Indeed it has been considered by some authorities as incom-
patible with the judicial function. Such was the opinion
of the first justices of the supreme court of the United
States. Speaking through Chief Justice Jay, they expressly
refused President Washington's request for their opinion on
a question of international law arising out of the wars of

the French Revolution. See 1 Warren, The Supreme Court in United States History, pp. 110-111. That court has ever since adhered to this view. *Chicago & Southern Air Lines, Inc.* v. *Waterman Steamship Corp.*, 333 U. S. 103, 113.

However, since article XII of amendments, sec. 2, to our state constitution expressly imposes the duty on the judges of this court to "give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly," we are obliged to respond even though our opinion may carry no mandate. In the present instance that will be of no consequence in view of the conclusion to which we have come on the question propounded.

It is our view that in the special circumstances here no issue can now be raised in a litigated case as to the validity of the election because of the 186 illegal votes. Had a timely protest been filed under the statute by candidate Goodwin the whole aspect of the situation would have been different. Since the 186 illegal votes would have cast a doubt on candidate McCabe's majority over candidate Goodwin, the validity of the entire election would be in such doubt as to require a new election for all candidates. This would be so because if a new election were ordered only for the fourth nomination it would be impossible to determine who would be ineligible to vote at such an election, there being no way of ascertaining from the voting lists which voters had voted for two candidates other than McCabe and Goodwin at the primary election. Consequently an entirely new election would be an indispensable necessity.

The inaction of candidate Goodwin to protest the election or of any other person qualified to do so has thus avoided the possibility of a successful attack upon the validity of the nominations of Savoie, McCarthy, Noble and McCabe. We therefore answer Your Excellency's question in the affirmative.

Mr. Justice Frost did not participate in this opinion.

FRANCIS B. CONDON
THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS