OPINION TO THE GOVERNOR.

JUNE 14 AS OF JUNE 11, 1963.

REQUEST FOR AN OPINION by governor with respect to exercise of power of eminent domain upon a determination by legislature or city council of Providence that a certain area of real property to be designated for redevelopment is blighted and substandard, considered by judges of supreme court and, for reasons stated in opinion, governor advised judges would refrain from answering questions and would return them to him for such revision and recasting thereof as deemed desirable as a preliminary to their resubmission if he so desired.

June 11, 1963

To His Excellency John H. Chafee
  Governor of the State of Rhode Island
    and Providence Plantations

We have received from Your Excellency a request for our written opinion in accordance with the provisions of art. XII, sec. 2, of amendments to the constitution of this state upon certain questions of law which in your letter you propound as follows:

"1. If the City Council of the City of Providence in this State, after due proceedings under Title 45, Chapter 32 of the General Laws of this State, as amended,

shall have found that, because of the existence of unsuitable soil conditions, the necessity of undertaking unduly expensive measures for making the area appropriate for sound development, or by reason of obsolete, inappropriate or otherwise faulty platting, deterioration of site improvements, diversity of ownership of plots, or tax delinquencies, or by reason of any combination of any of the foregoing conditions, the real property in said Providence, hereinafter described, is an arrested blighted area and thus a blighted and substandard area as described in Chapter 31, Section 8 of said Title 45, and shall have designated by resolution or ordinance said real property as a redevelopment area, pursuant to the provisions of said Chapter 32, thereupon will the Providence Redevelopment Agency, a body politic and corporate, created under and by virtue of the provisions of said Chapter 31 (as evidenced by the certified copy of a resolution of said City Council hereto annexed and made a part hereof) have power under said Chapter 32 to acquire by the exercise of the power of eminent domain, subject to the provisions of Section 25 of said Chapter 32, said real property or any portion thereof or any estate or interest therein?"

This question continues in the form of a description by metes and bounds and by assessor's plat and lot numbers of a tract of land located in the city of Providence. The question further sets out that "The above-described tract is land laid out and delineated on a plan thereof entitled 'Railroad Relocation Project No. R. I. R-8, Providence Redevelopment Agency, Providence, Rhode Island' hereto annexed and made a part hereof." It is to be noted that this tract of land is by specific reference incorporated into each of the remaining questions that Your Excellency has propounded.

The remaining questions read as follows:

"2. Does the General Assembly have the power validly to determine by legislation whether the real property described in question 1, excepting as aforesaid in question 1, is a blighted and substandard area within

the meaning of that phrase as used in Article XXXIII of amendments to the constitution of the State?

"3. Does the City Council of the City of Providence have power validly to determine by resolution or ordinance that the real property described in question 1, excepting as aforesaid in question 1, is a blighted and substandard area within the meaning of that phrase as used in said Article XXXIII?

"4. If the Providence Redevelopment Agency should acquire the real property described in question 1, excepting as aforesaid in question 1, or any portion thereof or any estate or interest therein, by the exercise of the power of eminent domain, pursuant to the provisions of and after due proceedings under said Chapter 32, will the necessity for such acquisition be conclusively presumed upon the adoption by the Agency of a resolution which shall

"(a) contain a description of the real property or any estate or interest therein sufficient in detail to permit identification thereof;

"(b) declare that the acquisition of the real property or any estate or interest therein is in the public interest and necessary for the public use; and

"(c) state that said real property or any estate or interest therein is included in a redevelopment project approved under said Chapter 32?"

Questions 1, 3, and 4 as propounded inquire as to the consistency with the provisions of art. XXXIII of amendments to the state constitution of legislation already enacted by the general assembly. Question 2 as propounded inquires as to the power of the general assembly to declare by legislative action property blighted and substandard within the meaning of said art. XXXIII. In each question the thrust of the inquiry is prospective and relates to the precise effect of specific action proposed to be undertaken pursuant to law upon real property located within the tract of land designated in question 1. This circumstance causes us concern as to whether these questions may be held reasonably to

come within the scope of sec. 2 of art. XII of amendments which requires the judges of this court to give their opinion upon questions of law when requested to do so by the governor or either house of the general assembly.

The pertinent provisions thereof require that the judges of this court upon request "give their written opinion upon any question of law * * *." It is settled that this provision is mandatory in nature when the inquiry falls within the purview thereof. We have said, however, that it does not so obligate the judges as the judicial department of the state but rather in their capacities as individual judges of this court and therefore action pursuant thereto does not constitute an exercise of the judicial power. *Opinion to the Governor*, 93 R. I. 252, 174 A.2d 553.

The judges of this court, cognizant of their obligation to the co-ordinate branches of the government, have long refrained from expressly constricting the area of inquiry to which the pertinent constitutional provisions have application. We have on numerous occasions, however, stated our reluctance to subvert the principle of the separation of powers by translating the obligation to give advisory opinions upon request into a grant of authority to give such opinions where the inquiry is not such as to reasonably be within the purview of the constitutional provisions.

In *To Certain Members of the Senate in the General Assembly*, 58 R. I. 142, the judges of this court expressed their concern in this respect when at page 146 we said: "While it is our duty to render advisory opinions in all cases in which the senate, functioning as such, may properly state and require them, it is no less our duty, in view of the separation of the executive, legislative and judicial departments of government, to abstain from doing so in any case which does not fall reasonably within the constitutional clause relating thereto." Because of the substance and the prospective thrust of the questions that are here propounded,

we are moved to reiterate the concern to which we referred in that opinion.

It is clear that sec. 2 of art. XII of amendments imposes upon the judges of this court as individuals an obligation with respect to the co-ordinate branches of the government that no provision of the constitution requires of them in favor of the people, the prime repository of sovereignty. In such circumstance we will not presume that the imposition of this peculiar obligation was a mere gesture without reason or purpose. The obvious repugnance thereof to the principle of separation of powers precludes any such presumption on our part. It is our opinion that this requirement to give advisory opinions was included in the constitution in order to enable the executive and legislative departments to more effectively discharge particular duties that are textually committed to them by the constitution.

Article VII, sec. 2, of the constitution requires that the governor "shall take care that the laws be faithfully executed." Article IV, sec. 1, declares that the constitution is the supreme law of the state and that any law inconsistent therewith is void and goes on to provide: "The general assembly shall pass all laws necessary to carry this constitution into effect." It is our conclusion that these constitutional provisions, in effect, require the performance of a continuing obligation by the executive and by the general assembly. Because we take that view we find inescapable the conclusion that the effective performance of this obligation on the part of the executive and legislative branches requires from time to time assistance from the judges of this court upon questions of law, assistance which the framers of the constitution contemplated as being best provided through the device of the advisory opinion.

When sec. 2 of art. XII of amendments is read in this light, it becomes clear that the requirement that such an opinion be given "upon any question of law" was intended

to be exclusory in effect. It was intended primarily to exclude the requirement that such opinions be given upon questions of law that do not challenge the consistency of law, enacted or proposed, with pertinent constitutional provisions. It is our further opinion that excluded from the scope of the requirement are opinions which involve directly or indirectly an exercise of the fact-finding power of the court. Primarily then we are of the opinion that the pertinent constitutional provision requires that the judges of this court furnish advisory opinions only with respect to the consistency with constitutional provisions of legislation either enacted or proposed.

Our conclusion that the constitutional requirement does not apply to inquiries that can be answered only through an exercise of the fact-finding power by this court follows necessarily from the fact that under the pertinent provisions the judges of this court act as individuals and not as the judicial department of the state government. *Opinion to the Governor*, 89 R. I. 329, 332. It is obvious that the judges, when acting as individuals, are without power to determine facts either on the evaluation of evidence or by way of evidentiary presumption. That power inheres in the court as the judicial branch of the state government, and it may not be exercised by judges when acting as individuals pursuant to the provisions of sec. 2 of art. XII of amendments.

We have deemed it necessary to discuss the limitations of the requirements thereof because each question directly involves the effect of legislative or administrative action upon a designated area of the city of Providence or on the real property located therein. As we have already noted, in each question inquiry is made as to the effect of stated action, either legislative or administrative, upon the real property located within the specifically described tract of land. To answer each question as propounded would require an exer-

cise of the fact-finding power of this court, at least by way of presumption.

Findings of fact made by the judges of this court, acting in their individual capacities and not as the judicial department of the state, would be null and void. Clearly the judges of this court individually are without power to make a finding of fact, and therefore we must of necessity give our opinions without any consideration of the effect thereof on real property located within the tract of land described in question 1. In other words, further consideration of the questions propounded will be made upon the basis that all references to the land described in question 1 have been stricken therefrom and that incorporation of such land by reference in questions 2, 3, and 4 is likewise stricken.

It may be conceded that on many occasions the judges of this court, moved by an appropriate concern for the common good, have co-operated with the co-ordinate branches of the government and given advisory opinions on questions of law that relate only indirectly to the consistency thereof with pertinent constitutional provisions. Generally, however, an examination of those opinions discloses that we scrupulously avoided violation of the principle of separation of powers. We so acted in those situations because of a conviction that the doctrine of separation is not an absolute bar to enlarging the area in which advisory opinions are given by the judges acting as individuals and not as the judicial department of the state government. We would note, however, that in making such a liberal application of the provisions of sec. 2 of art. XII of amendments we did not intend to hold out the advisory opinion as a mechanism that may conveniently be substituted for litigation in order to obtain rulings upon the effect of law whether enacted or proposed.

However, upon reflection we are persuaded that we should refrain from answering the questions propounded and return them to Your Excellency in order to permit such re-

vision and recasting thereof as would be deemed desirable as a preliminary to their resubmission if you so desire. It appears to us that such action is made necessary by our deletion from the questions of all references to a particular parcel of land. We entertain substantial doubts that without such revision we can give relevant, instructive answers thereto.

The questions as propounded are of mixed fact and law and for that reason, as we have noted, are not within the purview of sec. 2 of art. XII of amendments. The manner in which they can best be recast as questions of law relevant to the pertinent constitutional provisions involves decisions that the judges of this court are not prepared to make. Such decisions will best be made after due consideration of the scope of our authority to give advisory opinions and the value of such advisory opinions on the rules of law contemplated in the questions when not given in the context of pertinent fact situations.

We are not aware that delay resulting from such revision would have an adverse effect upon any contemplated redevelopment procedures. The principles of law under consideration relate to the delegation of power to exercise eminent domain, a matter that has been considered and passed upon by this court in litigated cases in the past. The questions also relate generally to matters that have been the subject of statutory enactments by the general assembly. It is well settled that when the legislature acts in an exercise of the legislative power, it will be presumed to have acted within its constitutional limitations until the contrary be shown. In *East Shore Land Co.* v. *Peckham*, 33 R. I. 541, 548, this court, in passing upon a statute involving an exercise of the power of eminent domain, said: "All statutes are presumed to be valid and constitutional and the burden of proving the unconstitutionality of any statute is upon the party raising the question; furthermore, the rule

is that he must prove it beyond a reasonable doubt. *State v. Kofines,* 33 R. I., at p. 218 * * *."

Were we to undertake to answer the questions without revision we would of necessity note that the issues raised go to the constitutionality of certain legislative delegations of power either to declare a public use for which the power of eminent domain may be exercised or of delegations of the power of eminent domain. The presentation of the questions to us in this posture would leave us with little choice but to direct attention to the well-settled rule that such enactments providing for delegations of power by the legislature are presumed valid until their invalidity or unconstitutionality is otherwise established.

We are persuaded that as judges of this court we may not with propriety assume the burden of challenging the constitutionality of legislation to which our attention has been directed by a request for an advisory opinion on that precise issue.

> FRANCIS B. CONDON
> THOMAS H. ROBERTS
> THOMAS J. PAOLINO
> WILLIAM E. POWERS
> ALFRED H. JOSLIN