289 A.2d 430.
ADVISORY OPINION TO HIS EXCELLENCY, FRANK LICHT,
GOVERNOR OF THE STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS.

APRIL 5, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ADVISORY OPINION to the Governor relative to constitutional aspects of act referred to as H-1718 Substitute B, now G. L. 1956 (1969 Reenactment) chapter 18 of title 37, wherein a corporation called Rhode Island Development Corporation was established.

THE SUPREME COURT

Providence

April 5, 1972

To His Excellency, Frank Licht,
    Governor of the State of Rhode Island
        and Providence Plantations

This communication is sent as a reply to your request for our written opinion upon three specific questions which relate to the constitutionality of legislation enacted by the

General Assembly at its January, 1970 session and referred to by Your Excellency as H-1718 Substitute B.[1] The Act establishes a corporation called the Rhode Island Land Development Corporation and authorizes the corporation to acquire, develop, lease or sell real estate which is to be used as sites for various industrial and commercial endeavors. The state's municipalities and its agencies and commissions are empowered by H-1718 Substitute B to convey to the corporation any real estate that may be necessary or convenient to effectuate its authorized corporate purposes. The corporation may transfer any property it acquires to private individuals. In its effort to keep the corporation self-supporting, the General Assembly has permitted the corporation to issue revenue bonds. Apparently this legislation is to implement a recommendation found in your annual message given to the General Assembly gathered in grand committee on the first day of the January, 1970 session when you spoke of the scarcity in the state of prime industrial locations and promised to introduce legislation that would establish an Industrial Land Bank Program. *Journal of the House of Representatives,* January 6, 1970 at 15-16.

The three questions posed to us read as follows:

"(1) Is H-1718 Substitute B a bill within the purview of Article IV Section 14 of the Constitution of the State of Rhode Island and Providence Plantations and therefore one requiring an assent of two-thirds of the members elected to each house of the General Assembly before it can be validly enacted?

"(2) Can the State of Rhode Island, with or without consideration, validly lease, lend, grant, or convey to the Rhode Island Land Development Corporation, created pursuant to H-1718 Substitute B, surplus lands to be used for the purposes set forth in that legislation without acquiring the assent of two-thirds of the mem-

[1]Today, H-1718 Substitute B is cited as G. L. 1956 (1969 Reenactment) Chapter 18 of Title 37.

4

bers of each house of the General Assembly as provided for in Article IV Section 14 of the Constitution of the State of Rhode Island and Providence Plantations?

"(3) Assuming an affirmative answer to question (2), can the Rhode Island Land Development Corporation, created pursuant to H-1718 Substitute B, with or without consideration, validly lease, sell, exchange, mortgage, donate, convey or option to permissible parties mentioned therein, any land which was conveyed to it by the State of Rhode Island without such lease, sale, exchange, mortgage, donation, conveyance or option having been assented to by two-thirds of the members elected to each house of the General Assembly as provided for in Article IV Section 14 of the Constitution of the State of Rhode Island and Providence Plantations?"

We will, because of reasons that will be enumerated later, limit our reply to your first inquiry.

You have informed us that when H-1718 Substitute B passed each branch of the General Assembly on May 1, 1970, it received 35 affirmative votes in the Senate and 66 affirmative votes in the House of Representatives. The House, of course, is composed of 100 members. This fact brings us to our consideration of your first question.

Article IV, section 14 of the Rhode Island constitution requires the assent of two-thirds of the members elected to each house of the General Assembly whenever any bill seeks to appropriate public funds or property for local or private purposes. In order that the constitutionally required two-thirds vote be obtained, there must be at least 34 Senators and 67 Representatives voting in favor of any bill within the purview of article IV, section 14. *State Terminal Corp.* v. *General Scrap Iron, Inc.*, 107 R. I. 24, 264 A.2d 334 (1970). This constitutional limitation on the General Assembly is a matter of moment, however, only if the passage of H-1718 Substitute B has resulted in the appropriation of public property.

We have scrutinized the Act with care and find nothing

therein that conveys or transfers any public property to the development corporation. In other words, there was no need to obtain the requisite two-thirds affirmative vote when H-1718 Substitute B passed the House. We therefore answer your first inquiry in the negative.

As we turn to your remaining inquiries, we deem it appropriate that we reiterate some of the well-defined principles which serve as our guide whenever the Governor, or either branch of the Legislature, seeks our advice on some question of law. In *Opinion to the Governor*, 109 R. I. 289, 284 A.2d 295 (1971), we emphasized that we had to advise the chief executive only in those instances when the question propounded had a bearing upon a present constitutional duty presently awaiting performance by the Governor and that we cannot make any findings of fact. Earlier, in *Opinion to the Senate*, 87 R. I. 56, 137 A.2d 527 (1958), we stressed the need by the inquiring party to state the question in such a manner that there is no possibility of creating confusion as to the thrust of the inquiry and the subsequent reply. We must, because of the principles just enumerated, respectfully decline to answer questions two and three.

As noted in the earlier portion of this communication, there has been no appropriation of public property by the General Assembly to the corporation. The entity is no more than a de jure corporation because there has been no implementation of the 1970 legislation. Not until the corporation becomes operative and an effort is made to transfer public property to the corporation will Your Excellency be confronted with a constitutional obligation which would then require us to give you our advice.

The intended import of your last two inquiries is not entirely clear to us because of your reference to "surplus lands." H-1718 Substitute B contains no such qualification. It authorizes the state, its cities and towns and all state

agencies and commissions to grant, convey or lease to the corporation *"any real property"*,[2] including property which is now devoted to a public use with the sole exception of land acquired under the "Green Acres" legislation. (emphasis added) Even then, however, "Green Acres" land could be conveyed to the corporation if such a proposal won the approval of the electorate.

Once title is vested in the development corporation, it may "sell, exchange, mortgage, donate and convey"[3] its properties whenever it believes the proposed transaction would further its corporate purposes. While the goals of the corporation smack of a "public use"[4] and without expressing a definite opinion in this regard, we feel free to express our concern as to whether H-1718 Substitute B could be faulted on the ground that, by setting up the corporation, the General Assembly has made an invalid delegation of its responsibility relative to the appropriation of public property for a private use. This power, because of article IV, section 14, is vested only in the General Assembly. However, such a determination could only be made by an ad hoc evaluation of each and every transaction where property once in the public domain is conveyed through the corporation to the ultimate grantee. Such a determination would involve various findings of fact and this is beyond our pale.

Finally, we note that the 1970 Act specifically exempts any conveyance or lease made by the corporation from the provisions of §37-7-4. Section 37-7-4 stipulates that whenever land has been taken for highway or park purposes,

---

[2] Section 37-18-5.

[3] Section 37-18-7(7).

[4] In *Romeo* v. *Cranston Redevelopment Agency*, 105 R. I. 651, 254 A.2d 426 (1969), we observed that, concurrent with the increase of governmental activities and services necessary to meet the needs of society, there has evolved a broader view as to what constitutes a public use.

the individual from whom such land was taken shall have the first option to purchase or lease any of the land that he once owned which is not needed for the purpose for which it was taken. The exemption afforded the development corporation flies in the face of article XVII of amendments to the Rhode Island constitution which gives the original landowner a constitutionally protected preemptive right to purchase or lease the remainder taken from him earlier by either the state or a municipality. *M. S. Alper & Son, Inc.* v. *Capaldi,* 99 R. I. 242, 206 A.2d 859 (1965).

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER