MR. JUSTICE CARRIGAN
dissenting:
I respectfully dissent for the reasons which previously compelled me to oppose our becoming involved in this controversy at the time the court agreed to answer the interrogatories propounded by the Governor in this case and by the Senate in No. 28000, In re Interrogatories of the Colorado Senate of the Fifty-First General Assembly, Senate Resolution No. 5 and S.B. 16. Because no opinions were published when those threshold decisions were made, and because the public has a right to know why I dissent in cases of such broad public interest, I am writing a single dissenting opinion applicable to both cases. One opinion suffices for *214 both cases because I would apply the same rule of law to both the Governor and the Senate.
As will be more fully explained below, prior precedents laid down by this court make it crystal clear that the bills here in controversy are not “pending” legislation as the term always has been defined for purposes of the rule limiting advisory opinions to “pending” bills. The gist of my dissent is that since the majority opinion has neither overruled nor distinguished those cases, they should be followed, and for reasons of sound judicial administration policy, we should decline to answer either the Governor or the Senate.
Colorado is one of only a few states in which the supreme court is constitutionally or statutorily authorized to give advisory opinions on questions from the legislature or the executive.[1] Colo. Const. Art VI, sec. 3, provides that the court “shall give its opinion upon important questions upon solemn occasions when required by the governor, the senate, or the house of representatives . ... ”
It is for the court, rather than the legislature or the executive, to decide whether the questions are of sufficient public importance and solemnity to justify exercising this extraordinary power. Therefore, each time interrogatories are propounded, the court’s initial inquiry must be whether or not it should answer them. E.g., In re Interrogatories by the Governor, 126 Colo. 48, 245 P.2d 1173 (1952). In making that preliminary decision, this court must constantly bear in mind that the promulgation of an advisory judicial opinion in response to what amounts to an ex parte inquiry from either the executive branch or the legislative branch, concerning the affairs of the other branch, is patently inconsistent with the bed-rock principle of our political system: that power has been separated into three distinct departments. In re Speakership of the House of Representatives, 15 Colo. 520, 25 P. 707 (1890). Only in the rarest cases where this court’s opinion is demonstrably essential to the public interest should we allow ourselves to be drawn into disputes between the other two equal, coordinate branches of government. Our job is not to participate in the legislative process, but to decide actual cases, nearly always after their *215 facts have been established by trial on the merits between the real parties in interest.
For the above reasons, even though such an advisory opinion power may be constitutionally authorized, it must be exercised with the utmost vigilance, caution, and self-restraint. In the Matter of the Constitutionality of Senate Bill No. 65, 12 Colo. 466, 21 P. 478 (1889). In this instance, by answering the interrogatories, the court departs from restrictions which it has consistently and wisely imposed upon itself in the past to prevent parties from abusing this extraordinary procedure for ulterior motives as well as to avoid being drawn into matters not properly the subjects of advisory opinions. Today’s departure from precedent is accomplished without distinguishing, overruling or even mentioning our contrary past cases, thus casting doubt upon the continuing vitality of long-recognized restrictions on the legislative power to invoke this court’s opinion regarding validity of legislation.
A firmly rooted prerequisite to exercise of the advisory opinion power, recognized by this court virtually since the adoption of Art. VI, sec. 3, has been that legislative interrogatories, to warrant an answer, must be concerned with “pending” legislation. In re House Resolution No. 12, 88 Colo. 569, 298 P. 960 (1931); In re Interrogatories of the House of Representatives, 62 Colo. 188, 162 P. 1144 (1916); In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333 (1913); In re Senate Bill No. 416, 45 Colo. 394, 101 P. 410 (1909); In re University Fund, 18 Colo. 398, 33 P. 415 (1893); In the Matter of the Constitutionality of Senate Bill No. 65, supra.
A similar limitation has been established by the courts in nearly every other state with similar advisory opinion provisions. E.g., Opinion of the Justices, 294 Ala. 604, 320 So.2d 622 (1975); Opinion of the Justices, 355 A.2d 341 (Me. 1976); Opinion of Justices to the Governor, 363 Mass. 889, 294 N.E.2d 346 (1973); Opinion of the Justices, 115 N.H. 329, 340 A.2d 112 (1975); Advisory Opinion to Governor, 110 R.I. 1, 289 A.2d 430 (1972); Opinion to House of Representatives, 107 R.I. 77, 264 A.2d 920 (1970).
For these purposes, this court has uniformly considered a bill to be no longer “pending” if the house propounding the interrogatory has already taken a final vote on it. In re House Resolution No. 12, supra; In re Senate Bill No. 416, supra. This rule comports with the plain meaning of the word “pending” which has been defined as, “1. not yet decided; 2. being in continuance, in suspense.” Webster’s New Collegiate Dictionary 847 (1976). Black’s Law Dictionary defines “pending” as:
“Begun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment.” (Rev. 4th Ed. 1968 at 1291).
This court, applying the plain, ordinary meaning of the word “pending” in the instant context, has previously held:
*216 “Legislative questions must be connected with pending, not with completed, legislation. Both bodies of the general assembly have taken a final vote upon this bill and it no longer can be considered pending legislation.” In re Senate Bill No. 416, 45 Colo. 394 at 395, 101 P. 410 at 410-11 (1909). (Emphasis added.)
I note that both bodies of the general assembly have taken a final vote on every bill whose validity is at issue in these two cases.
Obviously none of the alleged defects in either the Senate’s “ayes and noes” voting or the Governor’s vetoes had anything to do with S.B. 16, the only bill anyone asserts to be “pending.” The majority opinion, with no support in the law of this or any other jurisdiction, has simply stretched the “pending” requirement beyond logic or has overruled it sub silentio.
The wisdom of restricting advisory opinions to “pending” bills is readily apparent when one considers the rule’s purpose. Once legislation has already been passed, and the normal process by which laws are enacted or vetoed has run its course, private parties may, and should be entitled to, act in reliance on the apparent state of the law inferrable from events publicly known. Rights or duties arise daily pursuant to the actions of citizens based on their reasonable expectations of what the law is. An advisory opinion to the Senate or Governor affecting rights of private parties not granted access to the judicial process by which those rights are affected, and issued long after apparent completion of the legislative process and adjournment of the General Assembly, is highly inappropriate. When, as in this dispute, a long time period has elapsed before anyone has even questioned the validity of a veto or a vote, this reasoning is especially applicable:
“It is a principle declared by our constitution . . ., and of universal recognition, that no person shall be deprived of life, liberty or property without due process of law. But there cannot be due process of law unless the party to be affected has his day in court. Yet a careless construction and application of this constitutional provision might lead to the ex parte adjudication of private rights by means of a legislative or executive question, without giving the party interested a day or voice in court.” In the Matter of the Constitutionality of Senate Bill No. 65, 12 Colo. 466 at 469, 21 P. 478 at 479.
We cannot assume that the attorneys who appeared in this case adequately represented the interests of all those private parties whose rights turn on whether we hold these statutes were validly enacted, or vetoed. Absent today’s majority opinion, those parties would have been entitled to their day in court. See also In re Senate Resolution No. 4, supra; In re Interrogatories of the Senate, 54 Colo. 166, 129 P. 811 (1913). This court does not and cannot know what actions have been taken by private parties in the many months that have passed since the legislature completed its work on these 1977 bills. Therefore, the court should not purport *217 to settle those parties’ rights in a proceeding in which they cannot be parties and are not represented. “It must be remembered that advisory opinions are not merely advisory opinions. They are ghosts that slay.” F. Frankfurter, A Note on Advisory Opinions, 37 Harv. L. Rev. 1002 (1924).
Adversaries in a real lawsuit have time and incentive fully to investigate the underlying facts, to object to imcompetent evidence, and to put each other’s claims to the test of cross-examination. None of these ordinary trial safeguards which distinguish our judicial fact-finding process were observed here. The facts have been either stipulated or assumed by the court, but those not allowed to be parties might have put forth additional evidence not here considered because neither the Senate nor the Governor felt it was relevant to the issues they wished to raise.
Examples based on the bills affected could be set out indefinitely. Even worse is the potential chaos created by the ghosts of bills from bygone years, long believed slain by the veto power, but today resurrected. Surely the court cannot apply one rule to the vetoes of the incumbent governor, but a different rule to those of other governors. What then becomes of the concept of the rule of law? The majority have rejected Mr. Justice Erickson’s solution which would have applied these totally new standards prospectively only.
Nor is it an answer that each year’s consolidation of the prior year’s new enactments into an annual supplement automatically repeals laws not reproduced in the supplement. There remains, even after applying that analysis, the problem of rights and obligations which vested between the effective date of each bill invalidly “vetoed” since 1886, and the date that “law” was repealed by omission from an annual supplement. The point is that the majority’s efforts to lay to rest in these two cases the myriad of issues involved in many totally unrelated bills most likely will give rise to more litigation than is settled, as Hercules found when each head he cut off Hydra promptly was replaced by two heads. In more homely terms, we here sow wholesale what we shall have to reap retail.
No major countervailing public interest compels us to forsake the usual orderly processes by which parties directly affected may test the validity of statutes in adversary proceedings. There is no need for this hasty adjudication of many bills without opportunity to litigate the underlying facts whose resolution is essential to proper invocation of the law.
When one considers the purpose of the interrogatory procedure, it is obvious that this court’s response to a legislative interrogatory, regarding validity of a bill no longer awaiting action by that body, amounts to nothing more than a gratuitous opinion, because no further legislative action on that bill depends on the court’s advice. The major purpose of Art. VI, sec. 3, is to enable the legislature to obtain this court’s advice as to the validity of proposed laws, and thereby prevent enacting unconstitutional legislation. In re Senate Resolution No. 4, supra. An advisory opinion *218 on the bills here at issue, which have already left the legislature following its final action, certainly does not serve that purpose. Therefore the court not only risks adjudicating private rights not argued or considered, but it does so with no compelling reason.
Moreover, although this court has not in the past applied to the governor the requirement that interrogatories relate to “pending” legislation, the policy and rationale of that rule apply equally to the governor in this particular case. The bills at issue here have been finally acted upon by the governor, and no further action of his depends on our advice. For that reason, there is no need for this court to risk deciding the rights of private parties not here represented. Opinion of the Justices, 294 Ala. 604, 320 So.2d 622 (1975); Opinion of the Justices to the Governor, 363 Mass. 889, 294 N.E.2d 346 (1973); Opinion of the Justices, 115 N.H. 329, 340 A.2d 112 (1975); Advisory Opinion to the Governor, 110 R.I. 1, 289 A.2d 430 (1972).
In an attempt to avoid the long settled precedents limiting this court’s advisory opinions to legislation still “pending,” the Senate’s interrogatories direct the court’s attention to S.B. 16, which was introduced, not at the 1977 session which gave birth to the bills whose validity is here questioned, but on January 4, 1978, in the following year’s session. Of all the bills mentioned in the majority opinion, only S.B. 16 awaits any further action by the Senate. But there is no claim asserted that S.B. 16 is invalid or unconstitutional and, of course, no attempt to veto it is here in issue.
The purpose of S.B. 16 is to authorize the 1977 supplement to the 1973 Colorado Revised Statutes, and to reenact the statutes set forth in the supplement. Because of the substantial questions regarding the validity of the Governor’s vetoes of 1977 acts, it is argued, there is uncertainty as to which laws enacted in 1977 should be printed in the annual supplement, and it is said that the supplement cannot properly be formulated without guidance from this court. Thus, the argument concludes, legislative action is still pending on these bills, and the court should address their validity.
This contention, however, merely seeks to divert the court’s attention from the bills whose validity is really questioned, and ignores the purpose of the “pending” requirement. Even assuming, for the sake of argument, that a decision by the General Assembly not to publish the contested bills in the supplement would effectively repeal them,[2] that implied repeal could not operate to extinguish any rights or liabilities which might already have attached during the bills’ effective periods. See sections 2-5-113(2)(c) and 2-5-117(3), C.R.S. 1973.
Therefore, regardless of the “uncertainty” surrounding publication of the supplement, any advice this court gives concerning these contested *219 bills still runs the danger of adjudicating the rights of private parties who have had no notice or opportunity to be heard in these proceedings. Since it is the validity of those 1977 bills, and not S.B. 16, that is at issue, the fact that S.B. 16 is “pending” is irrelevant.
Any decision the Senate might now make to publish or not to publish in the annual supplement the 1977 bills, cannot affect the validity of their initial enactment or any purported veto. Nor have we been given any valid reason why, if the General Assembly wishes to publish bills the governor has vetoed, and thus obviate any claim that they were repealed by non-publication, the established procedure employed in the session laws cannot be followed; i.e., each such “law” could be published along with a caveat setting out the facts regarding the contested veto, leaving for those whose rights are affected the choice of whether or not to litigate. Surely the mere difference in printing time or expense is not sufficient cause to justify the turmoil the majority opinion wreaks.
Finally, weighty considerations of sound judicial administration, in my view, mandate this court’s non-participation. Justice Frankfurter’s language in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946), is especially applicable here:
“Nothing is clearer than that this controversy concerns matters that bring courts into immediate and active relations with party contests. From the determination of such issues this Court has traditionally held aloof. It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law.” 328 U.S. at 553-54, 66 S.Ct. at 1200, 90 L.Ed. at 1434.
The same sentiment was reiterated in Justice Frankfurter’s dissent in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961), where he wrote:
“The Court’s authority — possessed of neither the purse nor the sword — ultimately rests on sustained public confidence in its moral sanction. Such feeling must be nourished by the Court’s complete detachment, in fact and in appearance, from political entanglements and by abstention from injecting itself into the clash of political forces in political settlements,” 369 U.S. at 267, 82 S.Ct. at 737-38, 7 L.Ed.2d at 714-15[3] (Emphasis added.)
In my view we should follow the well-established precedents above discussed and decline to decide the issues here raised unless and until they are litigated in the usual manner assuring due process of law to the persons most directly affected.

 See Ala. Code tit. 13, §34 (1958); Del. Code Ann. tit. 10, §141 (1975); Fla. Const. Art. 4, §1(c); Me. Const. Art. VI, §3; Mass. Const. pt. 2, ch. 3, art. II; N.H. Const. pt. 2, art. 74; R. I. Const. amend. 12, §2; S.D. Const. Art. V, §5. In eight states — Connecticut, Kentucky, Missouri, Nebraska, New Jersey, New York, Pennsylvania and Vermont — the advisory opinion procedure has been discontinued. Stevens, Advisory Opinions — Present Status and an Evaluation, 34 Wash. L. Rev. 1 (1959), at 7, n. 32. For a history of advisory opinions in the United States, See A. Ellingwood, Departmental Cooperation in State Government (1918), at 30-78.

 See sections 2-5-113 and 2-5-117, C.R.S. 1973.

 This case does not necessarily involve “political questions” as that term has been defined by the United States Supreme Court. See Hart & Wechsler, The Federal Courts and the Federal System 214-241 (2d Ed. 1973). However, the format in which the questions are posed is, or has the potential of being, highly political, and the need for caution in becoming involved cannot be over-emphasized.