### In re ADVISORY OPINION to the GOVERNOR (Appointed Counsel).

### No. 95–265–M.P.

Supreme Court of Rhode Island.

Nov. 10, 1995.

Joseph S. Larisa, Harris Weiner, Governor, Thomas Dickinson, Aaron Weisman, Attorney General, for the Governor.

R. Kelly Sheridan, Linda Buffardi, Bar Association, John Dineen, ACLU, Barbara Hurst, Paula Rosin, Catherine Gibran, Public Defender, Mary J. Ciresi, Andrew Horwitz, Assoc. of Criminal Defense, for Amicus Curiae.

To His Excellency Lincoln Almond, Governor of the State of Rhode Island and Providence Plantations:

We have received from Your Excellency a request seeking the advice of the justices of this Court in accordance with article X, section 3, of the Rhode Island Constitution on the following question of law:

"In view of the historical development of the law relating to the right of appointed counsel under the federal and state constitutions, and the more recent developments in federal case law, is the State of Rhode Island required by the Rhode Island Constitution to provide free counsel to indigents notwithstanding that the trial justice determines that no incarceration will be imposed?"

In response, we issued an order inviting briefs from various specified parties and all other interested parties. We have received and gratefully acknowledge briefs filed as amici curiae from the Attorney General, the District Court of Rhode Island, the Office of the Public Defender, the National Legal Aid and Defender Association, the Rhode Island Association of Criminal Defense Lawyers, the Rhode Island Bar Association, and the American Civil Liberties Union, Rhode Island Affiliate.

### Appropriateness of Request

■ Article X, section 3, of the Rhode Island Constitution provides that "[t]he judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly." This Court has concluded previously that the provision is mandatory in respect to inquiries that fall within the purview of this constitutional provision. *In re Advisory Opinion to the Governor,* 483 A.2d 1078, 1079 (R.I.1984). Nevertheless, this Court will generally refrain from advising the Governor on issues that do not have "a bearing upon a present

constitutional duty presently awaiting performance by the Governor." *Advisory Opinion to the Governor*, 110 R.I. 1, 5, 289 A.2d 430, 433 (1972).

■ As a threshold matter, we address whether the question of law propounded by you presents to us an appropriate subject for an advisory opinion. Your Excellency avers that your obligation to prepare and present a budget to the General Assembly, pursuant to article IX, section 15, of the Rhode Island Constitution, represents a constitutional duty awaiting your performance and argues that, therefore, your request is an appropriate one. We are of the opinion that Your Excellency has presented legitimate concerns that impede your ability to prepare a budget absent clarification of the requirements imposed by article I, section 10. We note on a related matter that on June 27, 1994, the Chief Justice of this Supreme Court entered an executive order prohibiting appointment of counsel to assist indigent litigants "save where constitutionally required." The order was entered in an effort to control expenditures for appointed counsel, which outlay had exceeded appropriations by more than $300,-000 in each of the prior two fiscal years.

■ Although we are responding to your request for advice in this instance, we would not consider that every issue affecting the state budgetary duties of the Governor or of the General Assembly would be a proper subject for such an opinion. *See, e.g., In re Advisory Opinion to the Governor*, 483 A.2d at 1079.[1] Rather, we have concluded that the question before us clearly affects an issue of constitutional proportions in respect to the rights of defendants charged with criminal offenses.

**United States Supreme Court Treatment of the Right to Counsel Clause of the Sixth Amendment to the United States Constitution**

The Sixth Amendment to the United States Constitution mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." In 1963, the United States Supreme Court made this requirement applicable to the states via the Fourteenth Amendment in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

The *Gideon* decision, however, did not reveal the contours of the right to counsel inasmuch as that holding was limited to facts that involved a felony conviction. The issue of the right to counsel was revisited in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in which the Supreme Court was asked to rule on whether indigent defendants facing misdemeanor charges are entitled to appointed counsel. The *Argersinger* Court concluded that the rationale of the *Gideon* decision "has relevance to any criminal trial, where an accused is deprived of his liberty." *Id.* at 32, 92 S.Ct. at 2010, 32 L.Ed.2d at 536. *Argersinger* went on to hold that any criminal prosecution resulting in the actual deprivation of an indigent defendant's liberty must be accompanied by the appointment of counsel for that defendant. *Id.* at 40, 92 S.Ct. at 2014, 32 L.Ed.2d at 540.

Although *Argersinger* did not specifically address the question of whether counsel must be appointed when no imprisonment will result, the Supreme Court did reach this issue seven years later, in *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Scott, an indigent defendant, was convicted of shoplifting and fined $50 after a trial in which he was not assisted by appointed counsel. In an opinion by Justice Rehnquist, the Court held that the right to appointed counsel under the Sixth and Fourteenth Amendments of the United States Constitution requires "only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Id.* at 374, 99 S.Ct. at 1162, 59 L.Ed.2d at 389.

The Supreme Court reaffirmed the holdings of *Scott* and *Argersinger* in *Nichols v.*

---

1. This Court has exercised its discretion to issue advisory opinions even on questions arguably improperly before the court, but of great public importance. *In re Advisory from the Governor,* 633 A.2d 664, 667 (R.I.1993); *In re Advisory Opinion (Chief Justice),* 507 A.2d 1316, 1319–20 (R.I.1986); *In re Advisory Opinion to the Governor,* 504 A.2d 456, 459 (R.I.1986).

*United States,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), and held that prior uncounseled misdemeanor convictions that did not themselves result in imprisonment could serve to enhance sentencing for subsequent offenses, even in the event that a subsequent sentence would include imprisonment. *Id.* at ——–——, 114 S.Ct. at 1927–28, 128 L.Ed.2d at 755. In so holding, the Supreme Court expressly adhered to its holding in *Scott. Id.* at ——, 114 S.Ct. at 1928, 128 L.Ed.2d at 755.

### Rhode Island Decisions Regarding Right to Appointed Counsel

The Rhode Island constitutional analogue to the Sixth Amendment guarantee of the right to counsel is found in article I, section 10, of the Rhode Island Constitution. This section protects a defendant's right to assistance of counsel in terms almost identical to those of its federal counterpart: "In all criminal prosecutions, accused persons shall * * * have the assistance of counsel in their defense." In 1971, prior to the Supreme Court's rulings in *Argersinger* and *Scott,* this provision was interpreted in *State v. Holliday,* 109 R.I. 93, 280 A.2d 333 (1971). In *Holliday,* this Court prefaced its conclusions by noting that there had been no precise guidance from the United States Supreme Court on whether the United States Constitution requires that defendants charged with misdemeanors be provided with counsel. *Id.* at 97, 280 A.2d at 335. In the absence of such guidance, we construed article I, section 10, broadly to require appointment of counsel for indigent defendants charged with misdemeanors that carry a potential prison sentence in excess of six months, even if no imprisonment is actually imposed. *Id.* at 98–99, 280 A.2d at 336–37.

We have not been asked, until now, to reexamine our holding in *Holliday* since the United States Supreme Court rendered its decision in *Scott.* On two occasions, this Court has uncritically followed its holding in *Holliday,* namely, in *State v. Moretti,* 521 A.2d 1003 (R.I.1987), and in *State v. Medeiros,* 535 A.2d 766 (R.I.1987). In *Moretti,* the defendant had been convicted of arson after the admission of evidence of several previous misdemeanor convictions that was used to impeach Moretti. On appeal, Moretti challenged the admission of the prior convictions, arguing that he had not been assisted by counsel when these convictions occurred. 521 A.2d at 1009. We acknowledged our holding in *Holliday,* but nevertheless decided the issue in favor of the state because there had been no "positive representation" by Moretti that he had been unlawfully denied counsel. *Id.* at 1010–11.

We had no occasion in *Moretti* to rule on the validity of *Holliday* in light of *Argersinger* and *Scott,* nor did we in *Medeiros,* where we were again asked to reverse a conviction on the basis of the trial justice's admission of prior uncounseled misdemeanor convictions to impeach the defendant's credibility. We determined that *Holliday* would not work to invalidate Medeiros's conviction because any error on the trial justice's part in admitting the convictions was harmless. *Medeiros,* 535 A.2d at 769.

In *Holliday* this Court had no means of ascertaining the direction that the Supreme Court would take, and it is clear that our prognostication in *Holliday* was inaccurate. *Holliday* did not anticipate that the Supreme Court's test would be incarceration rather than potential punishment. Indeed, *Holliday* did not meet the requirement of counsel in cases of incarceration, however brief that confinement would have been, that was set forth in *Argersinger* and *Scott.*

### Should This Court Read the Rhode Island Constitution's Right–to–Counsel Provision More Broadly than the Supreme Court Has Read the Sixth Amendment?

Although certain amici have argued that the protections afforded by the Federal Constitution establish only a minimum level of protection for criminal defendants, "[t]he decision to depart from minimum standards and to increase the level of protection should be made guardedly and should be supported by a principled rationale." *State v. Benoit,* 417 A.2d 895, 899 (R.I.1980). We are presented with no such rationale here.

In *Benoit* we held that the warrantless search of an automobile four hours after its seizure by police was invalid under article I, section 6, of the Rhode Island Constitution.

In so holding, we interpreted that provision more broadly than the Supreme Court had interpreted nearly identical language in the Fourth Amendment to the United States Constitution in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

In 1992, however, we overruled our decision in *Benoit* and held that the protection afforded against unlawful automobile searches by article I, section 6, of the Rhode Island Constitution was identical in scope to that guaranteed by the Fourth Amendment. *State v. Werner*, 615 A.2d 1010, 1014 (R.I. 1992). We noted that our departure from *Chambers* in *Benoit* was motivated by "the apparent inconsistency in Supreme Court case law at the time we decided *Benoit*." *Id.* at 1012. This Court concluded that "[b]ecause the federal case law that guided our departure from *Chambers* in 1980 has since been stabilized by the Supreme Court, we now believe that it is time to revisit *Benoit*." *Werner*, 615 A.2d at 1013. *Cf. Kleczek v. Rhode Island Interscholastic League, Inc.* 612 A.2d 734, 740 (R.I.1992) (construing equal-protection guarantee of article I, section 2, of the Rhode Island Constitution to provide protections similar to that of Fourteenth Amendment to United States Constitution); *State v. Diaz*, 521 A.2d 129, 133 (R.I.1987) (interpreting article I, section 7, of the Rhode Island Constitution to provide protection against double jeopardy of identical scope to that provided by Fifth Amendment to United States Constitution).

Similarly, our decision in *Holliday* was rendered at a time when no decisive Supreme Court authority was available to guide our interpretation of article I, section 10. This vacuum was filled when the Supreme Court issued the *Argersinger* and *Scott* decisions. We are of the opinion that it is timely that we revisit the *Holliday* holding and interpret article I, section 10, in a manner consistent with the United States Supreme Court's interpretation of the Sixth Amendment in *Scott*.

Our opinion in this case has firm grounding in this Court's constitutional jurisprudence. In *Diaz*, 521 A.2d at 133, we expressed our belief "that the balance achieved by the Supreme Court of the United States is

as favorable to the perceived rights of defendants as should rationally be applied in criminal cases. We are unwilling to interpret article 1, section 7 of the Rhode Island Constitution in such fashion as further to subordinate societal interests in effective prosecution of the guilty." Similar considerations of public policy motivate us to conform our reading of article I, section 10, to the United States Supreme Court's interpretation of the Sixth Amendment.

Moreover, this Court has recognized the validity of considering budgetary limitations in determining the extent of state-funded benefits for indigents. *Roe v. Affleck*, 120 R.I. 679, 390 A.2d 361 (1978). In *Roe*, we upheld the denial of medical-assistance benefits under the Services for Emotionally Disturbed Children Law, G.L.1956 (1977 Reenactment) §§ 40.1–7–1 to 40.1–7–9, even though the Department of Mental Health, Retardation and Hospitals (MHRH) had found the applicant eligible for such assistance. Roe was denied assistance by MHRH because the Legislature had not provided appropriations sufficient to provide aid to all eligible applicants. We determined that the "director of MHRH is not authorized to incur any debt which would bind the state except insofar as his action creating such a debt is authorized by law," and we concluded that the director had no duty "to contract for the care of eligible emotionally disturbed children in an amount that exceeds statutory appropriations." *Id.* at 690–91, 390 A.2d at 367.

█ Certain of the amici would have this Court provide heightened constitutional protection to indigent criminal defendants who, although they may face no threat of imprisonment, may suffer such consequences as denial of public housing and loss of professional licenses. It is well settled, however, that the full panoply of due-process protections attaches only when loss of a fundamental liberty results from state action. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *State v. Desrosiers*, 559 A.2d 641 (R.I.1989). In *Morrissey* the Supreme Court refused to require that the full range of due-process protections be afforded in parole-revocation proceedings because

"the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.

Although loss of a license or permit and denial of public housing are grave occurrences, they do not rise to the level of deprivation characterized by incarceration. An automobile driver, for instance, is not entitled to confer with counsel when asked to submit to a breathalyzer test, even though submission to or refusal of that test may result in loss of that driver's license, *Dunn v. Petit*, 120 R.I. 486, 388 A.2d 809 (1978), because there is no fundamental constitutional right to operate a motor vehicle. *State v. Locke*, 418 A.2d 843, 850 (R.I.1980). Therefore, we disagree with amici that counsel must be provided in a criminal proceeding simply because an indigent defendant may subsequently lose a comparable property right.

In *Holliday*, we stated:

"We think it is entirely reasonable to conclude that the state has a legitimate interest in the efficient and inexpensive disposition of petty criminal cases and that the constitutional provision contained in our state constitution, art. I, sec. 10, does not contemplate imposing upon the state an unreasonable and onerous burden in accomplishing the disposition of such petty offense cases." 109 R.I. at 100, 280 A.2d at 337.

We conclude that it is (1) within the authority of the General Assembly to determine that the public interest would be served by increasing appropriations to provide counsel in situations not constitutionally required and (2) not the province of this Court to impose upon the state obligations that have no constitutional or statutory basis. We therefore advise Your Excellency that the United States Supreme Court's interpretation of the Sixth Amendment as a guarantee of a criminal defendant's right to counsel only when imprisonment is actually imposed represents the appropriate standard that should be applied under article I, section 10, of the Rhode Island Constitution. In conclusion, therefore, we respond to Your Excellency's question in the negative.

JOSEPH R. WEISBERGER,
Chief Justice
VICTORIA LEDERBERG
JOHN P. BOURCIER
DONALD F. SHEA
Justices

MURRAY, Justice, dissenting.

I respectfully dissent. In my view, this case is a definitive textbook instance in which the Governor's question is not properly the subject of an advisory opinion. However, if the Governor's request were properly before this court, I would answer the question in the affirmative.

Article X, section 3, of the Rhode Island Constitution requires the judges of this court, upon request, to "give their written opinion upon any question of law." It is settled that this provision is mandatory in nature when the inquiry falls within the purview thereof. We have on numerous occasions, however, stated our reluctance to subvert the principle of the separation of powers by translating the obligation to give advisory opinions upon request into a grant of authority to give such opinions in situations in which the inquiry is not such as reasonably to be within the purview of this constitutional provision. *See In re Advisory Opinion to the Governor*, 483 A.2d 1078 (R.I.1984); *In re Request for Advisory Opinion*, 472 A.2d 301 (R.I.1984); *Opinion to the Governor*, 109 R.I. 289, 284 A.2d 295 (1971); *Opinion to the Governor*, 96 R.I. 358, 191 A.2d 611 (1963). More specifically, the judges of the Supreme Court are constitutionally obligated to give their advice only when the question propounded raises an issue regarding the constitutionality of existing statutes which require the implementation by the Chief Executive, *In re Advisory Opinion (Chief Justice)*, 507 A.2d 1316, 1318–19 (R.I.1986), or when the question propounded has a bearing upon a present constitutional duty awaiting performance by the Governor. *Id.* at 1319.

Here it is undisputed that the question presented does not concern the constitutionality of an existing statute. The Governor, however, argues that the question presented has a bearing upon his constitutional obligation to "prepare and present to the general

assembly an annual, consolidated operating and capital improvement state budget." R.I. Const. art. IX, sec. 15. More specifically, the Governor argues that if the state is required to provide free counsel to indigent misdemeanor defendants, then he must allocate the funds to pay for counsel. The Governor's argument, however, is unconvincing. The question propounded is simply whether the state has an obligation to provide legal representation to indigent misdemeanor defendants. The question therefore does not bear upon the Governor's duty to present a balanced budget to the General Assembly, rather it bears upon the constitutional duty to appoint counsel for indigent misdemeanor defendants.

As an executive branch of the government, the Governor plays no role in the appointment of counsel for indigent misdemeanor defendants. The General Assembly, through its legislative powers pursuant to article VI, section 2, of the Rhode Island Constitution, created the Office of the Public Defender and stated that "[i]t shall be the duty of the public defender to represent and act as attorney for indigent defendants in those criminal cases referred to him * * * by the supreme court * * * by the district courts, and as are set forth in § 14–1–31 * * * ." G.L.1956 (1994 Reenactment) § 12–15–3. Given this legislative enactment, the Governor clearly has no constitutional duty regarding the right of indigent misdemeanor defendants to appointed counsel.

Because the question propounded does not bear directly upon any constitutional duty of the Governor and does not concern the constitutionality of an existing statute, it cannot serve as a proper basis for an advisory opinion. We have stated that "giving such [advisory] opinions in matters unconnected to the official function of the requesting coordinate branch would amount to inexcusable gratuitousness." *Opinion to the Governor,* 109 R.I. at 292, 284 A.2d at 296. Although I am cognizant of the fact that the Governor is required to present a balanced budget to the General Assembly, it is inappropriate for this court to perform a function that necessarily belongs to the executive branch. Nevertheless, if there is any consensus to be had in regard to the budgetary limitations for the payment of legal services for indigent misdemeanor defendants, it belongs to the legislative and not the executive branch of the government; where the Legislature has the the power to appoint counsel for indigent misdemeanor defendants, it is within the purview of the Legislature's powers to dictate the funds necessary for the payment of such services. *See Roe v. Affleck,* 120 R.I. 679, 390 A.2d 361 (1978) (even though this court has recognized the validity of considering budgetary limitations in determining the extent of state-funded benefits for indigents, the budgetary limitations were enacted and imposed by the legislative and not the executive branch of the government).

Even if I were to overlook the procedural deficiencies inherent within the Governor's request, I find that the State of Rhode Island is required to provide free counsel to indigent misdemeanor defendants notwithstanding a trial justice's determination that no incarceration will be imposed. At the outset, it should be noted that we have never wavered from giving greater protection to the citizens of this State under the Rhode Island Constitution than that afforded by the United States Constitution. In *State v. Bertram,* 591 A.2d 14 (R.I.1991), we stated that "there is no question that states may, in applying provisions of their constitutions or state charters, afford their citizens greater protection and security than is provided under the United States Constitution." *Id.* at 21. *See also Pimental v. Department of Transportation,* 561 A.2d 1348, 1350 (R.I.1989) (this greater protection may be given to the citizens of a state under the state constitution even if the federal and state constitutional language is similar). In *Ex parte Lee,* 123 F.Supp. 439 (D.R.I.1954), the Federal District Court stated that "[t]he right to assistance of counsel and 'due process of law' guaranteed by the Fifth and Sixth Amendments to the United States Constitution are not limitations upon the power of the states, but operate upon the national government only, applying only to trials in the federal courts." *Id.* at 443.

This state has a proud history of affording its citizens the right to counsel and has specifically declined to follow the United States

Supreme Court in limiting the provision of counsel to indigents. In 1941, long before *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), Rhode Island established a public counsel system for accused felons. Thirty years later, before the United States Supreme Court decided *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), this court, in *State v. Holliday,* 109 R.I. 93, 280 A.2d 333 (1971), extended the right to counsel for indigent defendants charged with serious misdemeanors which could subject them to an imposition of penalty in excess of six months' imprisonment. In 1987, after the Supreme Court decided *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), we stated in *State v. Moretti,* 521 A.2d 1003 (R.I.1987), and in *State v. Medeiros,* 535 A.2d 766 (R.I.1987), that the Rhode Island Constitution provides a broader right to counsel than that provided under the Federal Constitution. *Medeiros,* 535 A.2d at 768; *Moretti,* 521 A.2d at 1010.

Specifically, we found in *Moretti* that "[t]he confluence of the federal and the state guarantees is if an indigent Rhode Island criminal defendant faces a potential sentence of more than six months, Rhode Island constitutional law guarantees to a defendant appointed counsel, even if the trial justice predetermines that no prison sentence will be imposed. If the potential sentence is less than six months, federal constitutional law guarantees the defendant appointed counsel unless the trial justice predetermines that no prison sentence will be imposed." *Moretti,* 521 A.2d at 1010. Similarly, in *Medeiros,* we specifically stated that "the Rhode Island Constitution [requires] the appointment of counsel for an indigent defendant if the *potential* sentence exceeds six months' imprisonment even in the event that the trial jus-

tice predetermines that no prison sentence will be imposed." (Emphasis added.) *Medeiros,* 535 A.2d at 768. These cases make clear that even after *Scott,* this court held that the Rhode Island Constitution afforded indigent defendants a higher degree of protection; that is, we have recognized the right of indigent persons to appointed counsel notwithstanding that the trial justice determines that no incarceration will be imposed.

As a final matter, it should be stressed that we should not attempt to peer into the minds of trial justices. By answering His Excellency's request in the negative, the majority's decision effectively reduces the range of discretion previously afforded to trial justices in misdemeanor cases. The majority would have each trial justice determine whether incarceration may be imposed at the initial stages of an action, regardless of any later developments that may require the trial justice to impose a sanction of imprisonment. It is noteworthy that the District Court judges have represented that such a result would profoundly affect the quality of justice which is administered in the trial courts. Undeniably, by structure, they are positioned at the threshold to the access of justice.

For the reasons stated herein, I would conclude that the question advanced cannot serve as a proper basis for an advisory opinion. Even if I were to address the question presented to this court, I would answer in the affirmative.