**In re ADVISORY OPINION TO THE GOVERNOR (Conflict of Interest Commission).**

No. 85–334–M.P.

Supreme Court of Rhode Island.
Jan. 23, 1986.

Stephen J. Carlotti, Richard G. Small, William R. Grimm, Hinckley Allen Tobin & Silverstein, John F. Bomster, John B. Henderson, Charles H. DeBevoise, Adler Pollock & Sheehan Inc., Providence, Joseph J. Roszkowski, John A. MacFadyen, III, Barbara Hurst, as amicus curiae for the Rhode Island Bar Ass'n.

Arlene Violet, Atty. Gen., Shelia Tobie Swan, Asst. Atty. Gen., H. Jefferson Melish, Legal Counsel for Conflict of Interest Com'n.

His Excellency Edward D. DiPrete

 Governor of the State of Rhode Island and Providence Plantations

We acknowledge the receipt of a request from Your Excellency, pursuant to section 2 of article XII of amendments to the Rhode Island Constitution, for our opinion on the construction of G.L. 1956 (1984 Reenactment) chapter 14 of title 36, the Rhode Island conflict of interest statute.

The specific question asked by Your Excellency is as follows:

"DOES THE RHODE ISLAND CONFLICT OF INTEREST LAW, R.I.GEN. LAWS §§ 36–14–1 to 36–14–19, AS AMENDED, REQUIRE A STATE APPOINTED OFFICIAL, AS DEFINED BY THAT STATUTE, WHO IS A MEMBER OF A STATE AGENCY, TO RESIGN FROM THE STATE AGENCY WHEN BUSINESS IN WHICH THE OFFICIAL HAS A FINANCIAL INTEREST COMES BEFORE SUCH AGENCY OR DOES IT RATHER REQUIRE SOME LESSER ACTION ON HIS PART SUCH AS RECUSAL?"

Your Excellency asked this question in the context of Advisory Opinion No. 84–4, rendered by the Conflict of Interest Commission on February 23, 1984, to Robert C. Ray. Ray was a councilman for the town of Cumberland and also a 20 percent owner and employee of Luther A. Ray Builders, Inc., a company interested in submitting a bid to the town of Cumberland for the purchase of land owned by the town. The town had set up an open bidding procedure for the sale of this property. The commission advised that no violation of the conflict of interest statute, specifically § 36–14–4(e), subsections (1) and (2), would arise for Ray if he resigned his elective office on the town council prior to the council's consideration of the bid.

Initially, we would inform Your Excellency that it is our belief that it is appropriate for us to give our advice as to the question you pose. Article XII, sec. 2, of the amendments to our constitution provides that "[t]he judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly." It is well settled that this provision is mandatory when the inquiry falls within its purview. *In re Advisory Opinion to the Governor,* —— R.I. ——, ——, 483 A.2d 1078, 1079 (1984).

"[The] requirement to give advisory opinions was included in the constitution in order to enable the executive and legislative departments to more effectively discharge particular duties that are textually committed to them by the constitution." *Opinion to the Governor,* 96 R.I. 358, 363, 191 A.2d 611, 614 (1963). Thus it is appropriate to advise the chief executive when the question propounded has " 'a bearing upon a present constitutional duty presently awaiting [his or her] performance * *.' " *In re Request for Advisory Opinion Regarding House Bill 83–H–5640,* —— R.I. ——, ——, 472 A.2d 301, 302 (1984). When the question deals with enacted legislation, it falls within the exclusive prerogative of the Governor, rather than the Legislature, to seek our advice. *Opinion to the Governor,* 109 R.I. 289, 291–92, 284 A.2d 295, 296 (1971).

Article VII, sec. 2, of our constitution provides that it is the responsibility of the Governor to see that the laws of the state are faithfully executed. Many of the laws of our state that create state agencies require that the Governor appoint some or all of their members. *See, e.g.,* § 36–14–7 (the nine members of the Conflict of Interest Commission to be appointed by the Governor). Furthermore, art. VII, sec. 5, of the State Constitution requires the Governor to fill vacancies in office until they are filled by the general assembly or by the people. It is thus the Governor's constitutional duty to appoint state officers, and an interpretation of chapter 14 of title 36, enacted in 1976, amended in 1979, and reenacted in 1984, obviously relates to the effective discharge of that duty. For if resignation, rather than recusal, is required by the statute, it would be nonproductive for the Governor to appoint candidates with potential conflicts of interest to state office.

■ Since this inquiry is within the purview of our constitutional power to advise, a response from us will not, as is suggested, violate the doctrine of separation of powers. *Opinion to the Governor,* 96 R.I. at 362, 191 A.2d at 613. Article XII, sec. 2, of the amendments obligates the judges only in their capacities as individual judges and not as the judicial power of the state. *Id.* In such circumstances, "the doctrine of separation is not an absolute bar to enlarging the area in which advisory opinions are given * * *." *Id.* at 365, 191 A.2d at 615. Nor will we exercise the factfinding power of the court in reaching our decision. *In re*

*Request for Advisory Opinion Regarding House Bill 83–H–5640,* —— R.I. at ——, 472 A.2d at 302. The inquiry before us presents a pure question of law, since in construing Rhode Island's conflict of interest statute our response will be limited to the circumstances of Mr. Ray as they have been presented to us.

■ We are aware of the fact that the same legal issue presented to us is presently before the commission in a complaint filed pursuant to § 36–14–9.[1] Admittedly our established practice is to refrain from rendering advisory opinions when the questions propounded are involved directly or indirectly in litigation, whether in a judicial setting, *Opinion to the House of Representatives,* —— R.I. ——, ——, 433 A.2d 944, 944 (1981) (Superior Court), or as recently decided, in an administrative setting. *In re Advisory Opinion to the Governor,* —— R.I. ——, ——, 492 A.2d 134, 134 (1985) (Public Utilities Commission rate-setting determination).

However, the pending-litigation exception need not be applied in all circumstances. In an unreported 1945 opinion issued in response to a request by Governor John O. Pastore, reaffirmed in great detail in *Opinion to the House of Representatives,* 88 R.I. 396, 149 A.2d 343 (1959), our predecessors articulated the rationale behind the pending litigation exception. They allowed that the exception might be ignored under certain conditions:

" '[I]t was not intended by [sec. 2 of art. XII] *in the absence of more extreme*

---

1. We note that there is some question in regard to the status of this complaint before the commission, the complainant having sought to withdraw it prior to the time Your Excellency filed your request for an advisory opinion. The commission refused the complainant's request, stating that it is the "custom and practice" of the commission to retain jurisdiction over any complaint filed with it even if withdrawal is requested, since it is "deemed to be filed in the public interest and not to redress any private wrong." The commission, therefore, "does not permit a complaint to be withdrawn."

Although we do not decide the issue, we question the commission's authority to rely on a

"custom and practice" which is nowhere articulated either in the statute or the commission's regulations. Under the Administrative Procedures Act, agency rules, defined in the statute to include "practice requirements," G.L. 1956 (1984 Reenactment) § 42–35–1(g), are to be published to the public at least 20 days before promulgation, § 42–35–3(1), and normally do not become effective for 20 days after they are filed, § 42–35–4(b).

Since the determination of whether the commission was in error is not now ours to make, we shall, for purposes of this opinion, treat the litigation as pending.

*conditions than now appear* to require the justices to give an advisory opinion on a question of law which is involved materially in * * * a pending * * * case.'" (Emphasis added.) *Id.* at 400, 149 A.2d at 345.

In this instance, we believe that the commission's demand that Mr. Ray resign his position on the Cumberland town council presents a threat to Your Excellency's ability to persuade qualified individuals to assume positions of public trust. The public interest therefore requires us to respond to your question now.[2]

 Our task in construing any statute is to effectuate and establish the intent of the Legislature. *Howard Union of Teachers v. State,* —— R.I. ——, ——, 478 A.2d 563, 565 (1984). When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning. *Fruit Growers Express Co. v. Norberg,* —— R.I. ——, ——, 471 A.2d 628, 630 (1984). Such meaning is presumed to be the one intended by the Legislature, and the statute must be applied literally. *Exeter-West Greenwich Regional School District v. Pontarelli,* —— R.I. ——, ——, 460 A.2d 934, 936 (1983). When ambiguity renders construction necessary, an attempt must be made to "ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof." *City of Warwick v.*

*Almac's, Inc.,* —— R.I. ——, ——, 442 A.2d 1265, 1273 (1982). An interpretative regulation issued by an agency charged with the administration of a statute will ordinarily be given great weight when the statute is ambiguous and in need of interpretation, provided the agency's interpretation does not alter or amend the scope of the statute. *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 940–41, 392 A.2d 371, 373 (1978).

 Applying these principles to the conflict of interest law, we are of the opinion that §§ 36–14–4(a) and (g), 36–14–6, and 36–14–5 control whenever business in which a state or municipal appointed or elected official has a financial interest comes before the board or agency of which he is a member and that these provisions do not require resignation in circumstances such as those presented in the case of Mr. Ray.

It is the policy of the State of Rhode Island that "no elected or appointed state or municipal official use his office for personal gain in a manner inconsistent with the proper discharge of his duties."[3] Section 36–14–1. To implement this policy, the conflict of interest law prescribes "standards of conduct and disclosure requirements" to be observed by such officials in the performance of their official duties. *Id.*

Section 36–14–4 proscribes certain activities as *prohibited uses of office.* Section 36–14–4(a) provides that

Section 36–14–3(3) defines a "State or municipal agency" as
"any department, division, agency, commission, board, office, bureau, authority, any school, fire or water district within Rhode Island; either branch of the Rhode Island general assembly or any agency or any committee thereof or any other agency that is in any branch of Rhode Island state or municipal government and which exercises governmental functions other than in an advisory nature."

---

2. Other states have recognized a public-interest exception to restraints on the issuance of advisory opinions. *See Opinion of the Justices,* 57 Del. 495, 496, 202 A.2d 276, 277 (1964).

3. General Laws 1956 (1984 Reenactment) § 36–14–3(2) defines a "State or municipal appointed official" as
"an officer or member of a state or municipal agency * * * who is appointed for a term of office specified by the constitution or a statute of this state or a charter or ordinance of any city or town; or who is appointed by or through the governing body or highest official of state or municipal government."

"[n]o elected or appointed state or municipal official shall, while serving as such, have any interest, financial or otherwise, direct or indirect, or engage in any business, employment transaction or professional activity, or incur any obligation of any nature, *which is in substantial conflict with the proper discharge of his duties or employment in the public interest and of his responsibilities as prescribed in the laws of this state, as defined in § 36–14–6.*" (Emphasis added.)

According to § 36–14–6, in pertinent part, an official has an interest "in substantial conflict with the proper discharge of his duties" if

"he has reason to believe or expect that he or his spouse * * * or any dependent child, business associate or any business by which said person is employed or which said person represents will derive a direct monetary gain or suffer a direct monetary loss * * * *by reason of his official activity.*" (Emphasis added.)

An official does not have an interest in substantial conflict with his duties "if any benefit or detriment accrues to him or [any of the other parties enumerated] or any business * * * which [he] represents as a member of a business, profession, occupation or group to no greater extent than any other member of such business, profession, occupation or group." Section 36–14–6.

Section 36–14–5 prescribes the steps that an official must take when such official activity requires or may require him "to take an action, make a decision or refrain therefrom that will or can reasonably be expected to directly result in an economic

benefit" to himself or any of the other persons or entities listed in § 36–14–4. The official shall, "before taking any such action or refraining therefrom":

"(1) Prepare a written statement sworn to under the penalties for perjury describing the matter requiring action and the nature of the potential conflict * * *.

"(2) Deliver a copy of the statement to the commission, and

\* \* \* \* \* \*

(B) If said person is not a legislator, his superior, if any, shall, if reasonably possible, assign the matter to another person who does not have a conflict of interest. If he has no immediate superior, *he shall take such steps as the commission shall prescribe through rules or regulations to remove himself from influence over any action on the matter on which the conflict of interest exists.*" (Emphasis added.) Section 36–14–5.

Although § 36–14–5 directs an official without a superior to remove himself from influence over the action, it is ambiguous about the exact steps he should take. The regulation to which the statute refers is therefore entitled to great weight. *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. at 940–41, 392 A.2d at 373.

Regulation 1011 of the Conflict of Interest Commission's Regulations on Prohibited Activities elaborates upon § 36–14–5 and prescribes the procedure that an official facing a potential conflict of interest should follow before "making, influencing, or attempting to influence, a government decision."[4] When the official has a superior, that superior "shall reassign responsi-

---

**4.** According to Regulation 1009(c) of the Conflict of Interest Commission's Regulations on Prohibited Activities,

"[a] public official influences or attempts to influence a governmental decision when he or she *takes any action* for the purpose [of] affecting the making of a governmental decision * * * by a state or municipal agency [of] which the public official * * * is a member * * *." (Emphasis added.)

The making of a government decision occurs, according to Regulation 1009(b), when one

"1. votes on a matter

"2. appoints a person

"3. obligates a state or municipal agency to a course of action

"4. enters into any contractual agreement on behalf of a state or municipal agency

"5. determines not to act within the meaning of 1, 2, 3 and 4 unless the decision not to act is made because of a potential conflict of interest."

bility for such decision to another member [or] employee of the agency not having a conflict of interest." When the official has no superior, he "shall transfer full responsibility [for such decision] to another person within the agency not having a conflict of interest *and take no further interest in the matter.* If neither alternative is feasible, the public official shall request the Commission for an advisory opinion devising an appropriate procedure." (Emphasis added.) Conflict of Interest Commission Regulations on Prohibited Activities 1011(4).

We find from an examination of this statutory language and the regulations promulgated thereby a consistent indication that all that is required of an official is the avoidance of any official action over a particular matter that represents the source of conflict. A conflict exists when "by reason of his official activity" an official will benefit himself, his spouse, his dependent child, his business associate, or a business activity in which he is involved. Section 36–14–6. In face of a potential conflict, an official without a superior must take steps to "remove himself from influence over any action on the matter on which the conflict of interest exists," § 36–14–5(2)(B), "influence" meaning "taking action" to affect the agency's decision, regulation 1009(c), and must transfer responsibility for such decision to another person within the agency, taking "no further interest in the matter." Regulation 1011(4). Nowhere is it specifically indicated that resignation from the agency is necessary. Furthermore, only when transfer of an official's duties to another person within the agency is not feasible is resort to the commission for an opinion required. *Id.*

The commission argues that § 36–14–4(e), subsections (1) and (2), control the issue Your Excellency presents and has used these provisions to require resignation in several of its opinions, including the one involving Mr. Ray.

Under § 36–14–4(e), no public official or business associate of such official

"(1) [s]hall represent himself or any other person or act as an expert witness before any state or municipal agency of which said person is a member or is employed, elected or engaged except in the performance of his official duties.

"(2) [s]hall after severing his official position represent himself or any other person or act as an expert witness before the state or municipal agency of which said person was a member or was employed, elected or engaged for one (1) year after he has officially severed his position * * *."

The commission interprets the phrase "represent himself" to mean "the placing of any private interest, economic or otherwise, by any means whatsoever, on the agenda of the public body for decision." One amicus in its brief contends that the commission's interpretation of "represent himself" is the only one that makes sense; that the presentation of a private interest on the agenda of the body is a "use of the office for personal gain"; and that recusal cannot make a public official any less of a "member" of the body for purposes of § 36–14–4(e)(1), especially since § 36–14–4(e)(2) prohibits an official from "representing himself" before an agency for as long as one year after severing his connection with that agency.

It is our opinion that the commission has broadened the application of this provision far beyond the intent of the Legislature, and that § 36–14–4(e) does not control when business in which a public official has a financial interest comes before his agency unless he personally brings it there.

The commission has interpreted the active verb phrase "to represent himself" to include its passive counterpart, "to be represented." Read literally, however, §§ 36–14–4(e), subsections (1) and (2), prohibit a state official from actively presenting his cause or the cause of another before his agency—from personally "appearing before" the agency on his own or another's

behalf—while he is a member of that agency or for a year thereafter.[5]

"[T]he meaning of a word or words in a statute can become clear by reference to other words in the statute." *Howard Union of Teachers v. State,* — R.I. at —, 478 A.2d at 566. That § 36–14–4(e), subsections (1) and (2), also prohibit a public official from acting as an expert witness before his own agency strengthens our interpretation of "represent himself" since acting as an expert witness also falls into the category of "personally appearing before" a body. The purpose of such a prohibition is obvious and coincides with the reason for "remov[ing oneself] from influence over any action on the matter" under § 36–14–5(2)(B). An official cannot be actively and directly involved in a proceeding before his agency, be it as advocate, expert witness, or decision maker, without "using his office" to influence the outcome.

We agree that Supreme Court Rule 46 is analogous to § 36–14–4(e)(2), as is argued on behalf of the commission, but feel that it supports our construction of that provision. Rule 46 prohibits a former Supreme Court law clerk from "practic[ing] as an attorney or counselor in the Supreme Court" for one year after he leaves that position, obviously to avoid the possibility of bias based on the earlier relationship. We are of the opinion that § 36–14–4(e)(2) similarly prohibits a former member of an agency from personally appearing before

that agency for one year after he severs connection with it and for the same reason.

The commission's extension of the interpretation and application of § 36–14–4(e), subsections (1) and (2), is without basis either in the statute or in its own regulations interpreting the section.[6] Had it been the Legislature's intent to deny a public official the right to "be represented" or to have his or her private interest represented while he or she was a member of the agency, the Legislature could easily and explicitly have said so. The Legislature did not do so but instead handled such possibilities under §§ 36–14–4(a), 36–14–6, and 36–14–5, which, as we have seen, provide a method whereby an official may remain a member while such an interest is being represented and still avoid a conflict. In fact, had it been the Legislature's intent that § 36–14–4(e), subsections (1) and (2), be applied as the commission argues, there would have been no need for it to enact the procedural steps of § 36–14–5. Since the judicial branch of government "will not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory," *Cocchini v. City of Providence,* — R.I. —, —, 479 A.2d 108, 111 (1984), we do not subscribe to the commission's interpretation of § 36–14–4(e), subsections (1) and (2).

Although one can "remove himself from influence over action on [a] matter," as required by the provisions of the statute that we find applicable, by resignation as

---

**5.** "Represent" means:
"to act the part of, in the place of, or for (as another person) [usually] by legal right * * * to set forth or place before someone (as by statement, account, or discourse): exhibit (a fact) to another mind in language: * * * state with advocacy or with the design of affecting action or judgment." Webster's Third New International Dictionary, 1926 (1961).

**6.** Regulations 1015(a) and (b) of the Commission's Regulations on Prohibited Activities do not expand the phrase "represent himself" at all. The comment to these regulations allows that, contrary to a possible interpretation of § 36–14–4(e), a business associate of a public official can represent himself or another before an agency of which the official is a member. However,

the official cannot participate in such a case and avoid a conflict of interest.

We are of the opinion that this comment completely removes the business associate from the apparent strictures of § 36–14–4(e). The grammatical structure of the provision does not allow for an interpretation that prohibits a business associate from representing the public official's interest before the agency of which the official is a member. That the body of regulations 1015(a) and (b) do not make reference to the business associate in amplifying the prohibitions of § 36–14–4(e) supports our conclusion. *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 940–41, 392 A.2d 371, 373 (1978).

well as recusal, "the judiciary cannot broaden a statute through interpretation unless the clear purpose of the legislation would fail without the implication." *Gott v. Norberg*, — R.I. —, —, 417 A.2d 1352, 1356 (1980). We are of the opinion that the narrower remedy of recusal in circumstances such as those presented by Mr. Ray sufficiently protects against the threatened use of public office for personal gain, the stated goal of the statute.

We are guided in this conclusion by a consideration of Rhode Island statutes governing judicial conduct in the face of a conflict of interest. *See State v. Ahmadjian*, — R.I. —, —, 438 A.2d 1070, 1081 (1981) (statutes relating to the same subject matter should be considered together so that they will harmonize with each other, even though each contains no reference to the other and they are passed at different times).

General Laws 1956 (1985 Reenactment) § 8-3-5 provides that "[n]o justice shall sit in the trial of any cause in the event of which he may be interested." Canon 26 of the Canons of Judicial Ethics directs a judge to "abstain from performing or taking part in any judicial act in which his personal interests are involved. If he has personal litigation in the court of which he is judge, he need not resign his judgeship on that account, but he should, of course, refrain from any judicial act in such a controversy."

Moreover, Rhode Island case law dealing with this issue consistently refers to recusal as a remedy for potential judicial bias. *See State v. Romano*, — R.I. —, —, 456 A.2d 746, 752-54 (1983); *DiMaria v. Sabetta*, 121 R.I. 648, 649-50, 402 A.2d 738, 739 (1979); *Cavanagh v. Cavanagh*, 118 R.I. 608, 620-23, 375 A.2d 911, 917 (1977). As the United States Supreme Court noted in deciding that it was not a denial of due process for the Federal Trade Commission to act in proceedings after having earlier expressed an opinion that certain conduct at issue in the case before it was illegal, "[an administrative agency] cannot possi-

bly be under stronger constitutional compulsions in * * * respect [to disqualification] than a court." *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 703, 68 S.Ct. 793, 804, 92 L.Ed. 1010, 1035 (1948). Although the issue here is not constitutional, the principle applies. If recusal will suffice when a judge is faced with a conflict of interest, it must suffice for an official of a state agency in the same circumstances.

Furthermore, legislation in other states pertaining to the same subject matter is a helpful source of interpretive guidance. 2A Sutherland, *Statutes and Statutory Construction* § 52.03 (Sands 4th ed. 1984). We have not been made aware of any other state whose conflict of interest statute either specifically requires resignation or, having language similar to that in § 36-14-5(2)(B), has been interpreted to require resignation by an official in face of a potential conflict.

Moreover, "the Legislature should never be presumed to enact laws that lead to absurd or unreasonable results." *Trembley v. City of Central Falls*, — R.I. —, —, 480 A.2d 1359, 1363 (1984). Many of the statutes creating boards or commissions in the state, for example those regulating certain occupations, require that some of the appointees be members of the occupation being regulated. *See, e.g.*, G.L. 1956 (1976 Reenactment) §§ 5-20.5-12 (real estate commission); 5-20-6 (board of plumbing examiners); 5-19-3 (board of pharmacy); 5-38-2 (automobile body repair shop commission). Such board members obviously have a strong potential for conflict from the outset. To require someone to be a member of a board from which there is a strong possibility that he may have to resign is unreasonable. Section 36-14-5(2)(B) cannot be construed to permit such an outcome.

It should be emphasized that our conclusion that recusal would suffice in circumstances such as those presented by Mr. Ray also rests on the undisputed fact that the Cumberland Town Council's attempt to

dispose of the town property in question was subject to competitive bidding. The invitation for competitive bidding is significant because of the language of § 36–14–4(g). This provision of the conflict of interest law bars a state or municipal official, or any business entity in which the official has either an equitable interest of 10 percent or greater, or a capital investment of $5,000 or more, from entering into a contract with "any state or municipal agency" unless the contract has been awarded through a competitive bidding process during which bids have been sought "from the general public by public announcement or public advertising followed by a public disclosure of all bids or proposals considered and the contracts awarded." Sections 36–14–4(g) and 36–14–3(8).

From a reading of this provision, it would appear that if a state or municipal official, or a business entity in which the official has the specified financial interest, wishes to enter into a no-bid contract with the agency of which he is a member, the official might be forced to resign to avoid violation of the statute and the possible imposition upon him of the penalties provided for in §§ 36–14–13 and 36–14–18.[7] If, however, the award of the contract is open to competitive bidding, as it was in Mr. Ray's case, the official need only recuse himself from consideration of the matter to avoid a conflict.

We therefore advise Your Excellency that the Rhode Island conflict of interest law, chapter 14 of title 36, does not require a stateappointed official, as defined by that statute, who is a member of a state agency to resign when business in which the official has a financial interest comes before that agency, and that recusal will suffice unless the pertinent provisions of § 36–14–4(g) apply.[8] We appreciate the efforts made by the Rhode Island Bar Association, the Attorney General, the Rhode Island League of Cities and Towns, and Special Counsel to the Governor in submitting briefs to assist us in our consideration of this critical issue.

JOSEPH A. BEVILACQUA,
Chief Justice
THOMAS F. KELLEHER
JOSEPH R. WEISBERGER
FLORENCE K. MURRAY
DONALD F. SHEA
Justices

---

7. According to § 36–14–13(3), one who violates the statute may be subject to a civil penalty of not more than $10,000. Under § 36–14–18, a knowing and willing violation of the statute carries with it, in addition to the penalties provided for in § 36–14–13, the possibility of "a fine of not more than five hundred dollars ($500) and/or imprisonment for no longer than one (1) year and/or forfeiture of the elective or appointive office held."

8. We would like to draw Your Excellency's attention to the fact that § 36–14–4(g), read literally, bars the official or any business entity in which he has the specified interest from contracting with *any* state or municipal agency, not only the one of which he is a member, unless the contract is subject to open and public process. It further bars the official's spouse, dependent child, business associate, or business entity in which the spouse, dependent child, or business associate has the specified financial interest from entering into a no-bid contract with any state or municipal agency. We question whether the Legislature truly intended the apparent broad scope of this provision. However, we believe that the appropriate forum for clarification of § 36–14–4(g) is the general assembly.