**In Re ADVISORY OPINION TO THE HOUSE OF REPRESENTATIVES (Impoundment of State Aid to Cities and Towns).**

No. 90–133–M.P.

Supreme Court of Rhode Island.

June 28, 1990.

James E. O'Neil, Atty. Gen., Nicholas Trott Long, Asst. Atty. Gen., Edward Fogarty, Legal Counsel, House of Representatives, Joseph DeAngelis, Speaker, House of Representatives, Fred Joslyn, City Sol., Richard Pacia, Pawtucket, David Curtin, City Sol., Providence.

Peter Palombo, Jr. (Governor's Office), amicus curiae.

To the Honorable,

the House of Representatives

of the State of Rhode Island

and Providence Plantations:

We have received from Your Honors a resolution requesting, in accordance with the provisions of section 3 of article X of the Constitution of this State, an advisory opinion of the justices regarding this question of law:

"Whether the Governor may unilaterally reduce, impound and/or withhold from distribution more than $10 million of funds lawfully appropriated by the General Assembly to the individual cities and towns of the State of Rhode Island, notwithstanding the express provisions of 1989 R.I. Public Laws, ch. 126; R.I. General Laws, section 45–13–1; R.I. General Laws, sections 35–3–2, 35–3–7 through 35–3–12; R.I. Const., art. VI, sections 1, 2, and 10; and R.I. Const., art. IX, section 2."

At this time we would acknowledge the assistance afforded the members of this court by the amici curiae, including the executive counsel to Governor Edward D.

DiPrete and counsel to Speaker of the House Joseph DeAngelis.

In responding to an inquiry posed in *In re Advisory Opinion (Chief Justice)*, 507 A.2d 1316 (R.I.1986), the justices emphasized that they are obligated to give advisory opinions to either the House or the General Assembly only when the question propounded concerns the constitutionality of pending legislation and to the Governor only when the question propounded relates to the constitutionality of existing statutes that require implementation by the Governor. However, in overlooking the procedural deficiencies inherent within the petition then before us, we decided to proceed with a judicial review because of the constitutional and public importance of the question propounded to the court. The issue on that occasion (removal of the Chief Justice) was jointly raised by the legislative leaders and Governor DiPrete.

██ The public importance of the question currently propounded is clear. Several and quite possibly all of the State's municipalities adopted annual operating budgets in reliance upon the appropriations made by the General Assembly. It is evident that municipalities entered into contracts and agreements that were to be funded by the appropriations in issue. Therefore, the majority of the members of this court concluded that the question should be answered despite the fact that three of the State's municipalities had instituted actions in Superior Court.[1] *See In re Advisory Opinion to the Governor (Conflict of Interest Commission)*, 504 A.2d 456, 458 (R.I.1986), where this court noted that, despite our established practice of refraining from rendering advisory opinions when the questions propounded are involved in litigation, there are extreme circumstances involving the public interest in which we shall respond.

Because of the constraints of time and the importance of the issue presented, we

issued an order on May 9, 1990, in which the majority of the members of the court responded to the question propounded in the negative. We shall now set forth our reasons for so doing.

The facts that give rise to the difference of opinion between the Governor and the House of Representatives are not in dispute. At its January 1989 session, the Rhode Island General Assembly appropriated $38,966,464 to the State's municipalities for allocation and distribution by the Department of Administration in accordance with the provisions of G.L.1956 (1988 Reenactment) § 45-13-1.

Later, on February 6, 1990, Governor Edward D. DiPrete announced that he had "approved" certain "appropriation withdrawals" proposed by the Department of Administration—including the impoundment of $10,136,900 of the original appropriation allocated to the cities and towns as general state aid during the current fiscal year.

In taking this action, the Governor and his counsel rely on the provisions of G.L. 1956 (1984 Reenactment) § 35-3-16, which provides as follows:

> "At any time during the fiscal year, upon notification by the budget officer that it is indicated that actual revenue receipts or resources will not equal the original estimates upon which appropriations were based or that it is indicated that spending will exceed appropriations, the governor, for the purpose of maintaining a balanced budget, shall have the power to reduce or suspend *appropriations for any or all departments or subdivisions thereof,* excepting the general assembly, legislative agencies and legislative committees and commissions." (Emphasis added.)

Counsel to the Speaker of the House, appearing as amicus curiae, contends that (1) § 35-3-16 does not authorize the Governor to impound unilaterally funds duly ap-

---

1. These cases, brought by the cities of Woonsocket, Providence, and Pawtucket, were decided by a Superior Court justice on May 17, 1990. The trial justice's rulings permanently enjoined and restrained the Governor from unilaterally reducing, impounding or withholding from distribution funds lawfully appropriated by the General Assembly to the individual cities and towns.

propriated by the General Assembly to the State's cities and towns; (2) § 35–3–16 does not relieve the Department of Administration of its ministerial duty to allocate and distribute the duly appropriated state aid to cities and towns to the individual municipalities of the State; (3) the Governor's unilateral impoundment of such duly appropriated funds constitutes a breach of his constitutional duty to execute faithfully the laws of this State, as enacted by the General Assembly; and (4) the Governor's impoundment of the duly appropriated funds constitutes an unlawful and unconstitutional usurpation of the legislative power of the General Assembly.

Since 1947 the General Assembly has appropriated general state aid to the cities and towns of Rhode Island. In each of the first thirty-three years, an annual appropriation of $3 million was given to the cities and towns. From 1947 until 1968, the General Assembly designated that sum as "state aid to cities and towns," and the sum was listed in the annual appropriations act in a section designated "General."

In 1968, with the enactment of P.L.1968, ch. 197, § 1, the Department of Community Affairs was established within the State's executive branch and was charged with numerous duties relating to the needs of local government. Beginning in 1969 and terminating in 1979, the annual $3 million appropriation made by the Legislature for the benefit of the State's cities and towns was included in the Department of Community Affairs section of the State's annual appropriations act. That department was charged with the administrative duty of disbursing the appropriated funds. At its January 1979 annual session, the General Assembly amended section 1, chapter 13, of title 45 by including a new formula whereby the total amount to be appropriated to the municipalities would be based upon a percentage of the State's combined sales- and income-tax revenues. *See* P.L.1979, ch. 314, § 1.

Time marched on and in 1985 the Department of Community Affairs was abolished and the responsibility of "administration of aid to municipalities" was transferred to the Department of Administration. *See* P.L.1985, ch. 181, art. 61, §§ 2, 3. Since 1986 the annual appropriations made to the cities and towns have been listed in the Department of Administration section of the annual appropriations act.

■ The Governor's counsel now argues to this court that the Department of Administration is a "department" within the meaning of § 35–3–16. Counsel first cites G.L.1956 (1988 Reenactment) § 42–6–1(e), which specifically enumerates the Department of Administration as a department of State government. He then directs this court to § 35–1–4, entitled "Agencies subject to fiscal supervision," which reads: "The term 'department and agency' as used in this title shall be deemed to include and be interpreted to mean any department, division, board, commission, commissioner, committee, agent, officer, person or institution for whom an appropriation is made, or authorized to expend or to collect money for the state."

Next the Governor's counsel refers us to § 45–13–1, which indicates that sums appropriated to the cities and towns shall be included in the Department of Administration section of the annual appropriations bill. The combination of these statutes, the Governor's counsel contends, leads to an ineluctable conclusion that the Department of Administration is a department "for whom an appropriation is made" and a department "authorized to expend * * * money for the state" and is, therefore, a "department" included within the scope of title 35. Consequently, the Governor's counsel concludes, the Department of Administration is a department whose appropriations come within the reach of the reduction or suspension provisos found within § 35–3–16.

Counsel to the Speaker, however, contends that nothing in the forty-three-year history of the general state-aid program suggests that appropriations to cities and towns are currently, or were ever, departmental appropriations made to and for the Department of Administration. The funds, he argues, are a direct legislative appropriation to the thirty-nine cities and towns of

Rhode Island. The Department of Administration's role in this endeavor is to act as the entity charged with the responsibility of performing the mathematical calculations called for by § 45–13–1(b) through (d). The undersigned agree.

For the first twenty-one years that the General Assembly appropriated state aid to cities and towns, such appropriations were included as a line item in the so-called "General" section of the annual appropriations act. However, in 1969 the General Assembly began to list the appropriations in the section of the act entitled "Department of Community Affairs," a new department charged with the responsibility of performing the ministerial acts of administering and disbursing the appropriated funds. We are of the belief that this inconsequential change in listing practice did not serve to transform appropriations destined for the use and benefit of the State's municipalities into appropriations to be employed for the use and benefit of the Department of Community Affairs and after 1985 of the Department of Administration.

Furthermore it should be emphasized that § 45–13–1(i) specifically enumerates what sums of money are to be appropriated "to" and "for" the Department of Administration. Section 45–13–1(i) reads as follows:

> "The department of administration shall annually certify to the controller the formula computations and the distribution of state aid to each city and town as described in this section. The department of administration shall be reimbursed for reasonable administrative expenses not to exceed one quarter of one percent (.25%) of the funds designated as state aid to cities and towns from this section, the payments to be identified as restricted revenue and appropriated directly to the department of administration."

Since 1987 the General Assembly has appropriated, in accordance with the provisions of § 45–13–1(i), an amount equal to 0.25 percent of the total general state-aid appropriation directly to the Department of Administration. This specific statutory directive belies the suggestion of the Governor's counsel that the entire state-aid appropriation is an appropriation to the Department of Administration and, therefore, subject to the Governor's power to reduce or suspend, as set forth in § 35–3–16. It is our opinion that if one considers this statutory command in combination with the lengthy history of legislative state aid to the municipalities, the position of the Governor's counsel becomes untenable.

■ We acknowledge that the Governor's counsel contends that even if the appropriations are made directly to the various municipalities of this State, the Governor retains the power to impound the funds in question. In espousing this position, counsel could be said to have embarked upon a game of semantic hopscotch where first we hop to § 35–1–4 and focus on the inclusion of the word "person" in the legislative definition of "department and agency." We then skip to G.L.1956 (1988 Reenactment) § 43–3–6, which provides that the word "person" may be construed to include "bodies corporate and politic." Finally we must jump to the conclusion that since the municipalities of this State are included within the term "person," they are also included among those departments whose appropriations are subject to reduction or suspension by the Governor pursuant to § 35–3–16.

However, the hop, skip and jump approach, although ingenious, ignores the clear and unambiguous language of § 35–3–16. The Speaker's counsel contends, and we agree, that the language of § 35–3–16 makes it crystal clear that cities and towns are not, by any stretch of the imagination, "departments or subdivisions of state government."

The undersigned subscribe to the well-established principle of statutory construction that states that "when the language of the statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists and we are required to give the words of the statute their plain and obvious meaning." *O'Neil v. Code Commission for Oc-*

*cupational Safety and Health,* 534 A.2d 606, 608 (R.I.1987).

Section 35–1–4 sets forth a definition of the term "department and agency." However, the term used in § 35–3–16 is "departments or subdivisions thereof." It is the opinion of the undersigned that the "clear and sensible meaning" is one in which the term "departments or subdivisions" is limited to departments of State government only.[2] If the Governor's counsel's argument is to be accepted, then any person or entity, public or private, who or which receives appropriated State funds becomes a "department" of the State government. We cannot subscribe to such an all-encompassing, albeit tenuous, definition.

Having reached the conclusion that the funds appropriated and designated as "state aid to cities and towns" are not appropriations to and for the benefit of the Department of Administration and having concluded that the state's thirty-nine municipalities are not "departments or subdivisions thereof" within the ambit of § 35–3–16, the undersigned respectfully respond to the inquiry posed by the Honorable members of the House of Representatives in the negative.[3]

/s/Thomas F. Fay
Chief Justice Thomas F. Fay

/s/Thomas F. Kelleher
Associate Justice Thomas F. Kelleher

/s/Florence K. Murray
Associate Justice Florence K. Murray

SHEA, Justice, dissenting.

I am of the opinion that the Governor has the authority, under the plain language of G.L.1956 (1984 Reenactment) § 35–3–16, to withhold from distribution the funds in question appropriated by the General Assembly. That language states that the Governor "shall have the power to reduce or suspend appropriations for any or all departments or subdivisions thereof." The funds in question were appropriated to the Department of Administration and to a subdivision of that department, the Office of Municipal Affairs. Nothing in the statute limits this authority to withhold or to suspend appropriated funds to "routine intragovernmental appropriations for day to day operations," as suggested in the Honorable Speaker's amicus brief.

I agree that "when the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists and we are required to give the words of the statute their plain and obvious meaning." *O'Neil v. Code Commission for Occupational Safety and Health,* 534 A.2d 606, 608 (R.I.1987). The members of the majority are of the opinion that the phrase "all departments or subdivisions thereof" is ambiguous. I do not agree. For these reasons, I respectfully dissent.

WEISBERGER, Justice, dissenting.

The majority recognizes that this court has held on a number of occasions that it is obliged to render an advisory opinion to

**2.** The language of G.L.1956 (1984 Reenactment) § 35–3–16 that is now in issue first appeared in the public laws enacted during the May 1935 session of the General Assembly. The Administrative Code Act of 1935, P.L.1935, ch. 2250, § 1, provided, in section 2, that the "powers and duties" of the "several state boards, bureaus and commissions and other administrative agencies" would be vested in eleven departments "hereinafter specified." Clause J, of section 12, of the act was the forerunner of § 35–3–16. There can be found the first reference to "departments or subdivisions thereof." Clearly, this term refers to those "departments or subdivisions thereof" listed within the act. This list of departments was expanded by the Administrative Act of 1939. *See* P.L.1939, ch. 660, § 1. Eventually this list was codified as § 42–6–1 of the General Laws. This legislative history further belies the

contention of the Governor that the term "departments or subdivisions thereof" was intended to encompass more than the departments of the State government as enumerated in G.L.1956 (1988 Reenactment) § 42–6–1.

**3.** Because the undersigned are of the opinion that the Governor may not reduce, impound, and/or withhold from distribution funds appropriated by the General Assembly to the cities and towns of Rhode Island, we find it unnecessary to address the contentions of the Governor and the Speaker of the House concerning the mandatory or discretionary nature of the duties imposed upon the Department of Administration pursuant to G.L.1956 (1988 Reenactment) § 45–13–1.

either House of the General Assembly in response to a question regarding the constitutionality of pending legislation and to the Governor in response to a question relating to a present constitutional duty awaiting performance by the Chief Executive. *In re Advisory Opinion (Chief Justice)*, 507 A.2d 1316 (R.I.1986); *In re Advisory Opinion to the Governor (Conflict of Interest Commission)*, 504 A.2d 456 (R.I.1986); *Opinion to the Governor*, 109 R.I. 289, 284 A.2d 295 (1971); *Opinion to the House of Representatives*, 99 R.I. 377, 208 A.2d 126 (1965). We have held steadfastly to this limitation with few exceptions.

In *In re Advisory Opinion (Chief Justice), supra,* we did answer a question propounded by the leaders of both Houses of the General Assembly concerning the propriety of the removal of the Chief Justice by a joint resolution of the House and the Senate. I would point out, however, that this request did deal with the constitutionality of pending legislation. Although the request came from the leaders of each House and the Governor, we pointed out that our advisory opinion may be requested only by a majority of either House of the General Assembly in respect to the constitutionality of pending legislation or in response to an inquiry by the Governor in respect to a present constitutional duty awaiting his or her performance. 507 A.2d at 1318–19. It was obvious that a request propounded by the leaders of both Houses of the General Assembly was technically defective but that such a question could have rapidly been transformed into a request by either House. We cautioned, however, that our answering the question should not serve as a precedent. *Id.* at 1319.

In the present inquiry, however, the House of Representatives clearly propounds a question that has nothing to do with the constitutionality of pending legislation. The request seeks an advisory opinion concerning a duty to be performed by the Governor in respect to legislation already enacted. Such a question under our cases should not be answered pursuant to article X, section 3, of the 1986 Rhode Island Constitution or its predecessor article XII, section 2, of the Amendments to the Constitution of 1843.

Any reply from this court to an advisory request made by the House of Representatives in respect to a duty to be performed by the Governor is particularly inappropriate in light of the undisputed fact that the Governor does not seek our advice on this question. Indeed, the Governor has filed a brief clearly indicating that he feels that at this time our answer to such a question propounded by the House of Representatives would be a violation of our precedents. With this position I wholeheartedly agree.

I should also point out that there is already litigation pending in the Superior Court based upon the precise issue of the Governor's power to withhold moneys appropriated through the Department of Administration for the benefit of the various cities and towns. Such pending litigation could elicit an answer from us that would have binding precedential effect. It is clear that an advisory opinion simply sets forth the opinions of the individual justices and is without weight as legal precedent. *Opinion to the House of Representatives,* 99 R.I. at 380–81, 208 A.2d at 128 (citing *G. & D. Taylor & Co. v. Place,* 4 R.I. 324, 362 (1856)).

In respect to the merits of the question, since my colleagues are of the opinion that the question should be answered, I would join in the dissenting opinion filed by Justice Shea. My joining in this opinion on the merits of the question should in no way be construed as indicating a belief on my part that an answer should be given.