DECISION
The matter presently before this Court is Roberta K. Ventetuolo's (Ventetuolo) appeal from a February 15, 1995 decision of the Rhode Island Board of Nurse Registration and Nurse Education (Board). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
I. Case and Travel
Ventetuolo is a licensed Registered Nurse in Rhode Island employed as a school nurse in the City of Cranston. A ten year-old child, while playing football in the school yard, was injured on Cranston school property on November 16, 1993. The child injured his head and eye as a result of a collision. Upon arriving at the school, after the incident had occurred, Nurse Ventetuolo found the injured child sitting in front of the principal's office holding an ice pack to his head. She observed the bruise, which consisted of a little swelling and redness on the cheek near his nose and eye. When she asked how the injury felt, the child responded "It hurts." Tr. of Nurse Ventetuolo at 35. After observing the child, Nurse Ventetuolo left the child where he was found and proceeded to her office. Nurse Ventetuolo did not have any more contact with the child that day.
Subsequent to Nurse Ventetuolo's consultation with the child, his mother arrived at the school. Nurse Ventetuolo's recommendation was for the child's mother to take her son home and he would be fine. Upon the mother's return to her child, she noticed he looked worse and then he started vomiting. An ambulance was called and the boy was transported to the hospital from the school. Nurse Ventetuolo did not participate in these events and was not notified of the complications of the child's head injury.
The Board commenced an investigation in response to a complaint submitted by the boy's mother regarding the level of care administered to her child by Nurse Ventetuolo. Upon the recommendation of the investigation committee, an administrative hearing was commenced. The allegations of unprofessional conduct were that the petitioner violated G.L. 1956 (1995 Reenactment) §5-34-24 while working as a registered nurse at the Cranston Johnston Catholic Regional School, Cranston, Rhode Island, because she failed to properly assess and monitor a child after the child had been involved in a traumatic event on November 16, 1993.
The Board made the following findings of fact:
 ". . .
 5. Upon arriving at the school (after the incident occurred) Nurse Ventetuolo failed to assess properly the child and follow procedures as written.
 6. An "Emergency and First Aid Procedures" effective September, 1993 through June 1994 for the Cranston Public Schools was submitted to the Hearing Committee. This document identifies the policies and procedures to be used in head injuries.
 7. The Board finds that these were not followed by Roberta Ventetuolo, R.N. Specifically the procedures state that "If a person is conscious have him/her lie down and apply ice". The child was left sitting in a chair outside the administrative offices of the school.
 8. Patients with head injuries are often prone to sudden changes in condition which may not be readily apparent on initial assessment.
 9. An assessment for head injury consists of an evaluation of orientation, level of consciousness, pupillary response to light, assessment of skin condition, gait, and signs and symptoms of nausea and dizziness."
Board's Decision at 5-6. The Board, in turn, reprimanded Nurse Ventetuolo for unprofessional conduct in the practice of nursing and ordered her to complete a three-four credit Physical Assessment course within one year. In response, Nurse Ventetuolo filed the instant appeal.
II. Standard of Review
The review of a decision of the Board by this Court is controlled by G.L. 1956 (1993 Reenactment) § 42-35-15 which provides for review of contested agency decisions:
 ". . .
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure
 (4) Affected by error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing Court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Board's decision. Newport Shipyard v. Rhode Island Commission for HumanRights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion, i.e., more than a scintilla of competent evidence. Id. at 897. This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view evidence differently than did the Agency. The Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardov. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict ofInterest Commission, 509 A.2d 453, 458 (R.I. 1986).
III. Decision
Ventetuolo contends that the Board committed reversible error because: (1) the Board failed to dismiss the action in the absence of a sworn complaint; (2) Nurse Ventetuolo's due process rights were violated when an attorney from within the department prosecuting this action sat as a hearing officer; (3) substantial evidence does not exist in the record; and (4) the complaint was not sufficient.
 1. A sworn complaint is not necessary for the Board to institute an investigation of a registered nurse.
Nurse Ventetuolo contends that G.L. 1956 (1995 Reenactment) §5-34-25 requires that a sworn complaint must be filed prior to investigation of a matter can be undertaken. Section 5-34-25
states:
 "Procedure for discipline of licensees. — (a) Upon filing a sworn complaint with the board charging a person with having been guilty of any of the actions specified in § 5-34-24, two (2) or more members of the board of nurse registration and nursing education shall immediately investigate those charges, or the board, after investigation, may institute charges. In the event that investigation, in the opinion of the board, shall reveal reasonable grounds for believing the applicant or licensee is guilty of the charges, the board shall fix a time and place for hearing thereof and shall cause a copy of the charges, together with a notice of the time and place fixed for hearing, to be personally served upon the accused at least twenty (20) days prior to the time fixed for hearing. . . ."
This Court's task in construing any statute is to effectuate and establish the intent of the Legislature. In Re AdvisoryOpinion to the Governor, 504 A.2d 456, 459 (R.I. 1986). When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and this Court must give the words of the statute their plain and ordinary meaning. Id.
The plain and clear meaning of the statute does not require a sworn statement for the Board to investigate a licensee. The statute provides for two methods by which an investigation can be commenced of a licensee. First, an investigation must be commenced if a sworn complaint is filed with the board. Second, the Board may institute an investigation on its own accord. The statute employs the use of the conjunction "or" when listing the possible means in which an investigation can be initiated. The use of the term "or" indicates that each possibility is mutually exclusive as a means to commence an investigation of a licensee.[1] It is only after an investigation by the Board that reveals reasonable grounds for believing the licensee is guilty of charges that the Board may proceed to the next stage of the process and commence formal charges against the licensee to be heard at a formal hearing.
 2. Nurse Ventetuolo's due process rights were not violated when an attorney from the department prosecuting this action sat as a hearing officer.
Nurse Ventetuolo contends that her due process rights to a fair hearing were violated because an attorney in the department prosecuting this action sat as a hearing officer. In Davis v.Wood, 427 A.2d 332 (R.I. 1981), the Court established a standard for determining the possibility of due process violations when an administrative agency that is commencing an action against a licensee may also determine the validity of that action at the administrative hearing stage of the proceedings. In Davis, the Court stated that the inquiry whether the petitioner was prejudiced must focus on the actual prior involvement by the hearing officer in the case he is now deciding. "This finding is based upon the fact that one who has buried himself in one side of an issue is disabled from later judging that issue in a dispassionate manner." Id. at 337. The Rhode Island Supreme Court has stated that agency officials are presumed to be capable of judging a particular controversy fairly on the basis of its own circumstances and "that mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of administrative board members at a later adversary hearing." Id. (citing Withrow v. Larkin, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712, 728 (1975)). In the instant matter, the facts do not rise to the level already determined to be insufficient by the Court in Davis. There is no evidence contained in the record that the hearing officer was ever exposed to the investigation commenced in this case, and therefore Nurse Ventetuolo's due process rights were not infringed by the hearing officer's participation in this matter.
 3. Substantial Evidence exits in the Record
Under § 5-34-24(6), the Board has the power to discipline a nurse upon proof that the person is guilty of "unprofessional conduct." "Unprofessional conduct" includes, but is not limited to, "[W]illful disregard of standards of nursing practice and failure to maintain standards established by the nursing profession[.]" § 5-34-24 (6) (v). The record contains uncontroverted evidence relating to the appropriate conduct and standards that need to be followed when a nurse is confronted with a head and/or eye injury. The Board heard expert testimony regarding the level of care required in such situations and considered the "Emergency and First Aid Procedures" effective September 1993 through June 1994 for the Cranston Public Schools. This document identifies the policies and procedures to be used in head injuries. "Specifically the procedures state that `If a person is conscious have him/her lie down and apply ice'. Board's Decision at 5. Also, the expert testimony elicited that patients with head injuries are often prone to sudden changes in condition which may not be readily apparent on initial assessment. Id.
Furthermore, "[a]n assessment for head injury consists of an evaluation of orientation, level of consciousness, pupillary response to light, assessment of skin condition, gait, and signs and symptoms of nausea and dizziness." Id. at 6.
From the evidence before it, the Board found that "[u]pon arriving at the school (after the incident occurred) Nurse Ventetuolo failed to assess properly the child and follow procedures as written." Board's Decision at 5. Nurse Ventetuolo did not follow the procedures laid out in the "Emergency and First Aid Procedures." The child was left sitting in a chair outside the administrative offices of the school. Also, Ventetuolo did not follow the proper procedures provided by the expert witness concerning the assessment of an injury. Furthermore, Ventetuolo failed to constantly monitor the child even though children with head injuries are often prone to sudden changes in condition. Therefore, there is substantial evidence in the record to support the Board's decision that Nurse Ventetuolo's actions amounted to unprofessional conduct.
Ventetuolo contends that the Board incorrectly relied upon the testimony of the department's expert witness. She contends that the department's witness was not qualified as an expert and, even if she was qualified as an expert, the testimony elicited at the hearing was based on facts inconsistent with evidence adduced at the hearing and not contained in the record.
Rule 702 of the Rhode Island Rules of Evidence covers the admissibility of testimony by experts. Qualifying expert witnesses is a matter addressed to the discretion of the trial court and absent a showing of abuse, a reviewing court will not disturb the exercise of that discretion. Advisory Committee'sNote at 1062. See Leahey v. State, 121 R.I. 200, 397 A.2d 509
(1979). In the case before this Court, the department's witness was not a certified nurse in Rhode Island, but was certified in Massachusetts and her testimony was based upon the American Nurses' Association standards of care. The lack of certification in Rhode Island goes to the weight given to the witnesses testimony, but does not affect its admissibility. See Leahey v.State, 121 R.I. 200, 397 A.2d at 510. There is no evidence in the record that the Board abused its discretion when it accepted into evidence the testimony of the departments witness.
Nurse Ventetuolo's second contention regarding the validity of the expert's testimony relates to Rule 703. Rule 703 of the Rhode Island Rules of Evidence states that "[a]n expert's opinion may be based on a hypothetical question, facts or data perceived by the expert at or before the hearing, or facts or data in evidence." These facts or data need not be admissible in evidence if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.Advisory Committee's Note at 1064. Since there is no requirement that the evidence considered by an expert be admissible, the Board did not abuse its discretion by admitting the experts testimony.
 4. Complaint filed by Department was sufficient.
Nurse Ventetuolo's final contention is that the complaint she received pertained only to errors in her ability to "properly assess and monitor" the child, not that she failed to properly treat the child. Ventetuolo asserts that she was unable to properly defend herself and was unduly prejudiced because she was not prepared to defend the accusation that she mistreated the child, rather than failed to assess and monitor the child.
The record reveals that the notice presented to Nurse Ventetuolo was sufficient to place her on sufficient notice that her actions revolving around this incident were to be reviewed by the Board at the hearing. Although Nurse Ventetuolo took no action to treat the child after she learned that he had sustained an injury to his head, she also did not follow the well established procedures to assess a child with head and eye injuries. The Board found that "[a]n assessment for head injury consists of an evaluation of orientation, level of consciousness, pupillary response to light, assessment of skin condition, gait, and signs and symptoms of nausea and dizziness." Board's Decision at 6. Furthermore, Nurse Ventetuolo did not monitor the child after her insufficient assessment of the injuries when "[p]atients with head injuries are often prone to sudden changes in condition which may not be readily apparent on initial assessment." Board's Decision at 5. Ventetuolo's failure to properly treat the child relate to and are encompassed by her failure to properly assess the severity of the injury.
For the aforementioned reasons, this Court finds the Board's determination that Nurse Ventetuolo should be reprimanded for unprofessional conduct when she failed to properly assess and monitor a child who injured his head is supported by reliable, probative and substantial evidence in the record, is not affected by error of law, and does not constitute an abuse of discretion. The decision of the Board is therefore affirmed.
Counsel should submit the appropriate judgment for entry.
[1] Although it is the Board that investigates the licensee regardless of how the investigation is instituted, the first section of the statute provides for an internal check on the Board's discretion by requiring an investigation if a sworn complaint is brought to the Board's attention. The statute does not require a sworn complaint before the Board can act to protect the children of school from the potentially hazardous situation.